CASE 2—PETITION EQUITY—February 18.

## Bank of Louisville v. Baumeister, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

MORTGAGES—OPTIONS—FIXTURES.—V leased to S a vacant city lot for a term of five years for an agreed rent, the contract providing that S should erect a house upon the lot, and should have the option to purchase the leased premises at any time within five years for a named sum, to be paid in cash. S contracted with B for the erection of a house upon the lot, O agreeing to become surety for S for the price to be paid for the erection of the house upon condition that S would indemnify him. For that purpose S executed to O a mortgage upon the lease, and any buildings which might be placed on the premises, "together with the *option* to purchase said leased premises." V united in this mortgage for the sole purpose, as was recited, "of signifying her assent to the transfer of the said lease and *option*." The house having been erected upon the lot, V conveyed the lot to S for the price mentioned in the contract, but they so modified the original

agreement that only a part of the purchase price was paid, a lien being retained for the residue. Thereafter S mortgaged the lot, the house being then on it, to appellant. Subsequently he executed to B a mortgage on the lot, "with all the rents, issues and profits thereof." This action was instituted by B to enforce his mortgage lien. The other parties holding liens, being made defendants, asserted their liens, and the court rendered judgment, fixing the priority of liens and directing the proceeds of sale to be applied accordingly. Appellant contends that the judgment ought to be reversed to the extent that it gives O priority. *Held*—

1. Every kind of interest in real estate that is subject to sale and assignment may be mortgaged.

2. A contract for an option to purchase real estate at an agreed price within a specified period, when based upon a sufficient consideration, is enforceable, and such an option may be sold or assigned, and, therefore, may be mortgaged.

3. The owner of unproductive real estate may, as part of a contract of lease, and in consideration of rent to be paid by his lessee, or expense to be incurred in making it productive, as seems to be this case, bind himself to sell it within a prescribed period, at a stipulated price, at the option of the lessee.

4. But V, the only person ever having any right to deny the validity of that part of the contract, is now estopped to do so, having united in the mortgage, and thus induced O to become the surety of S upon the faith of her agreement to convey the lot to S. Moreover, the question of her obligation to convey was closed by her actually making a deed to S before he executed the mortgage to appellant.

5. The mortgage to O operated upon and affected the freehold after it was acquired by S, and his lien was subordinate only to that of V, the vendor.

6. There was an implied agreement by S to make his ownership of the lot complete by paying the purchase price in full, but, independent of this, O was entitled to whatever S did pay, as upon the discharge of a prior incumbrance, the mortgage interest has the full benefit of the discharge.

7. The house upon the lot was properly adjudged subject to O's mortgage, it being evident, under all the circumstances, that it was intended by S to be attached as a permanent improvement of the estate which he subsequently purchased. Fixtures attached to the realty after the execution of a mortgage upon it become a part of the mortgage security if they are attached for the permanent improvement of the estate, and not for a temporary purpose, or if they are such as are regarded as permanent in their nature, or if they are so fastened or attached to the realty as that the removal of them will be an injury to it.

8. B was properly adjudged to have a first lien upon the rents, as neither of the other mortgages created a lien upon any thing except the property mortgaged.

H. R. PHILLIPS FOR APPELLANT.

1. A contract to be specifically enforced must be mutual. The requisite mutuality includes both a mutuality of legal rights and a mutuality in the equitable remedy.

An "option to purchase" can not be specifically enforced, and conveys no title, legal or equitable, in land to the holder of the option, and a mortgage of the option conveys nothing. (Addison on Contracts, section 320; Story on Contracts, section 387; Fry on Specific Performance, section 166; Pomeroy on Specific Performance, section 162; Sutcliffe v. Brooks, 14 M. & W., 355; Allen v. Roberts, 2 Bibb, 98; Buecher v. Vanbuskirk, 2 Mar., 345; Barbour v. Pate, 2 Monroe, 5; Jones v. Noble, 3 Bush, 695.) Notice of a void mortgage avails nothing. (Butler v. Wheeler, 82 Ky., 475.)

2. To work an estoppel, there must be either a grant with a general covenant of warranty, or an express affirmation in the grantor's deed that he has such an estate as he assumes to convey. (Bohon v. Bohon, 78 Ky., 412; Bigelow on Estoppel, 266; Washburn on Real Property, 90, vol. 3, 98; Clark v. Baker, 14 Cal., 612; Kimball v. Blaisdell, 5 N. H., 533; Somes v. Skinner, 3 Pick. (Mass.); Comstock v. Smith, 13 Pick., 116; Dart v. Dart, 7 Conn., 250; Kinsmore v. Loomis, 11 Ohio, 475; Doswell v. Buchanan, 3 Leigh (Va.), 365; Pike v. Graham, 29 Me., 183; Partridge v. Patton, 33 Me., 483; Jackson v. Wright, 14 Johns., 193 (N. Y.)

3. Improvements made by tenant upon leased property, for purposes of trade, and with the intention that they shall not become part of the realty, are the personal property of the tenant. (Davis' Adm'r v. Eastman, 81 Ky., 116; Clore v. Lambert, 78 Ky., 224; Ewell on Fixtures, chap. 1; Van Ness v. Packard, 2 Peters, 137.) A mortgage of property to be acquired *in futuro* is void: (Ross v. Wilson, Peter & Co., 7 Bush, 29; Vinson v. Hallowell, &c., 10 Bush, 538; Loth & Hass v. Carty, 9 Ky. Law Rept., 132.)

HELM & BRUCE ON SAME SIDE.

1. The option gave no interest in the freehold, either legal or equitable, to Spalding, and was, therefore, not a legitimate subject of mortgage.

2. The mortgage of the leasehold and option could not, in any event, operate as a mortgage upon the freehold acquired by the lessee. (Bigelow on Estoppel, p. 337, 3d ed., and authorities cited; Washburn on Real Property, vol. 3, p. 96, 4th ed., and authorities cited.)

3. The improvements were personal property. (Van Ness v. Packard, 2 Peters, 137; Johnson v. Wiseman, 4 Met., 358; Clore v. Lambert, 78

Ky., 224; Davis v. Eastham, 81 Ky., 118.)   And as they were not in existence at the date of appellee's mortgage, the mortgage as to them was void.  (Ross v. Wilson, 7 Bush, 29; Hutchinson v. Foard, 9 Bush, 318.)

WM. LINDSAY of counsel on same side.

MUIR & HEYMAN for appellee BAUMEISTER.

1. The judgment as to the rents is not final but merely interlocutory, and, therefore, the appeal is premature.  (Freeman on Judgments, sections 12 and 29; Boone v. Talbot, 4 Dana, 404; Bondurant v. Apperson, 4 Met., 31 and 32.)
2. Baumeister is entitled under his contract to the rents of the realty. (Newport and Cincinnati Bridge Co. v. Douglass, 12 Bush, 705, 708; Douglass v. Cline, &c., 12 Bush, 617; Civil Code, section 298.)

DODD & GRUBBS for appellees.

Brief not in record.

JUDGE LEWIS delivered the opinion of the court.

September 14, 1883, by written contract between them, Mrs. V. H. Bullitt leased to George Spalding, for the term of five years, for an agreed rent, a lot of land situated in the city of Louisville, which contract contained a provision, the principal subject of controversy, and hereafter mentioned.   September 22, 1883, Spalding made a contract with appellee, Baumeister, for the erection upon the lot of a warehouse, for which he was to pay five thousand seven hundred dollars in ten semi-annual installments, appellee Olds agreeing to become surety therefor, upon condition Spalding would indemnify him against loss.   And October 1, 1883, a mortgage was executed for that purpose, Mrs. Bullitt being party thereto.   In that mortgage is the following recital:

"Whereas, by lease dated fourteenth day of September, 1883, Mrs. Bullitt leased to Spalding a tract

of ground (describing it); said lease giving to said Spalding *the option to purchase the leased premises at any time within five years for the sum of five thousand dollars, to be paid cash in hand,* to which lease reference is made for greater certainty, the same having been duly lodged for record in the Jefferson County Court Clerk's office." Following the farther recital that Olds had become surety in the notes to Baumeister is this clause:

"Now, in consideration of the premises, the said Spalding does hereby sell, assign and transfer to said Henry G. Olds the said lease, together with all right, title and interest of said Spalding in and to said lease and the premises therein described, and *any improvement or buildings which may be placed upon said premises,* together with *the option to purchase said leased premises, &c.*" On the part of Mrs. Bullitt is the following agreement and reservation: "The said Virginia H. Bullitt unites herein for the sole purpose of *signifying her assent to the transfer of the said lease and option.* It is distinctly agreed and understood that Spalding does not, by reason of this assignment, cease to be responsible to the fullest extent to Mrs. Bullitt for the fulfillment of said contract of lease between them."

October 6, 1884, Baumeister having in the meantime erected the warehouse in compliance of his contract, Mrs. Bullitt conveyed the lot to Spalding for the price mentioned; but they so modified the original agreement that, instead of the entire purchase money, only one thousand dollars of it was then paid, a lien being retained in the deed for the residue made payable

September 14, 1888, the day when the lease would have ended. January 26, 1885, Spalding mortgaged the lot, the warehouse being then on it, to appellant, the Bank of Louisville, to secure certain debts he owed it. And June 13, 1885, he executed a mortgage to Baumeister on the lot "with all the rents, issues and profits thereof," to secure payment of a note of that date for three thousand five hundred dollars. And in that mortgage " it was agreed that if said note shall not be paid at its maturity, then said second party may immediately enter upon and take possession of said real estate and collect the rents, and apply the same to the satisfaction of the debt."

This action was instituted June 16, 1886, by Baumeister; Spalding, Mrs. Bullitt, Olds and The Bank of Louisville being defendants. And in his petition he prayed judgment for his debt and application of proceeds of sale of the lot, and rents accrued and accruing during the pendency of the action to satisfy it. The defendants, creditors of Spalding, respectively asked judgment for their debts, and enforcement of their liens. And Spalding having consented that each of the debts against him might be treated as due, personal judgments therefor were rendered, and the priority of liens fixed and proceeds of the sale directed to be applied in the following order : 1. To Mrs. Bullitt for the balance of purchase money unpaid. 2. To Baumeister and Olds to the extent of the judgment of the former against the latter. 3. To the Bank of Louisville, balance unpaid of its mortgage debts. 4. To Baumeister, his debt secured by the mortgage of June 13, 1885. It was farther adjudged that Baumeister

had a prior lien for the rents secured by the mortgage
last named. From that judgment, except as it affects
Mrs. Bullitt, the Bank of Louisville appeals.

It is contended in argument that the judgment ought
to be reversed to the extent it gives Olds priority in
the proceeds of sale for the reasons: 1. That the option
of Spalding to purchase was not a subject of mortgage,
because no interest in the lot, legal or equitable, existed
in virtue of it. 2. That the mortgage did not in any
event operate upon or affect the freehold. 3. That it
was void as to improvements subsequently put upon
the lot.

By section 6, chapter 63, General Statutes, it is pro-
vided that "any interest in or claim to real estate may
be disposed of by deed or will in writing." And that
the right to dispose of such interest or claim was in-
tended to include the right to mortgage as well as to
sell absolutely is unquestionable. For it is well set-
tled, that every kind of interest in real estate may be
mortgaged if it be subject to sale and assignment.
(Jones on Mortgages, section 136.)

The simple inquiry then is, whether the option to
purchase the lot at the agreed price within the speci-
fied period was such an interest in or claim to the lot
as could be sold or assigned by Spalding. And the
answer to it depends upon whether the contract for
the option was or not enforceable.

It is true, as argued, "a contract must be mutual,
and one party can not be bound without the other."
But that does not mean that any one or more acts to
be done by one of the parties must necessarily be simul-
taneous with the consideration paid or agreed to be

paid by the other. The conveyance of the lot, upon demand and tender of the agreed price by Spalding, was obligatory on Mrs. Bullitt, if at all, because it was part of the contract of lease, which, being founded upon a valuable consideration, was valid and enforceable as an entirety. A naked agreement on her part to convey the lot for the stipulated price, at the option of Spalding, without any value received or to be received by her, or expense to be incurred or loss sustained by him on the faith of it, would not have been binding. But if Spalding agreed to lease and pay rent for the vacant lot, and incur the expense of putting a warehouse upon it, in order to make it remunerative, upon the faith of her agreement he should have the option to purchase at any time during the term of his lease, she was, it seems to us, unquestionably bound.

It is not unusual or unfair, on the contrary often of advantage to both buyer and seller of merchandise and farm products, to give to the one the option to receive, or to the other to deliver at an agreed price, a greater quantity or number than is or perhaps can be conveniently specified and fixed at the time of the contract. "Sales on trial" or "approval," and "sale and return," are terms of common use in the transfer of personal property, and indicate transactions that apparently lack mutuality; but they are not necessarily without consideration or disadvantageous to either buyer or seller.

We perceive no reason why the owner of unproductive real estate may not, as part of a contract of lease, and in consideration of rent to be paid by his

lessee, or expense to be incurred in making it produc-
tive, as seems to be this case, bind himself to sell it
within a prescribed period at a stipulated price, at the
option of the lessee. But it is useless to argue this
question farther. For Mrs. Bullitt, the only person
having any right to deny the validity of that part of
the contract, irrevocably bound herself to convey the
lot to Spalding upon the agreed terms, by making her-
self a party to the mortgage, and "signifying her assent
to the transfer of said lease and option."

Having thus by her own voluntary act caused Olds
to become the surety of Spalding in the note given to
Baumeister for erecting the warehouse upon the faith
she would convey the lot upon payment of the price
by Spalding, she was thereafter estopped to deny being
bound by the contract to do so. Moreover, the ques-
tion of her obligation to convey, if it had been an open
one, was closed by her actually making a deed for the
lot to Spalding before it was mortgaged by him to the
Bank of Louisville.

It is true that, instead of paying the whole of the
purchase money when the deed was made, in accord-
ance with the original contract, he paid only one thou-
sand dollars thereof, which was accepted by her. But
that change, made as he alleges without his consent,
did not in any way impair the rights of Olds as mort-
gagee. For although his security became of less value
than if the lot had been fully paid for, leaving no in-
cumbrance on it for unpaid purchase money, he could,
as was done, waive his right to insist upon a literal
compliance with the first contract, and still retain his
mortgage lien upon whatever interest Spalding acquired

under the deed. And that interest is precisely the same as if the lot had been conveyed to him in pursuance of a title bond. For the contract, even before it was supplemented by the mortgage, bound Mrs. Bullitt as effectually to convey the lot, with a good title, upon the terms specified in it, as she would have been by a covenant to convey, executed in due form. We are, therefore, unable to see upon what ground it can be contended the mortgage to Olds did not operate upon and affect the freehold after it was acquired by Spalding. The subject of the mortgage was the interest of Spalding in the lot secured by his contract with Mrs. Bullitt, and that interest he impliedly, if not in the express terms of the mortgage, agreed to make equivalent to a complete ownership of the lot by paying the purchase price in full. But independent of any agreement, Olds was entitled to the benefit of whatever he did pay. For upon the discharge of a prior incumbrance, whether it be a mortgage or vendor's lien, the mortgage interest has the full benefit of the discharge. (Jones on Mortgages, sections 138, 139.)

We think, whatever was the extent and value of Spalding's interest in the lot, the lien of Olds thereon was subordinate only to that of Mrs. Bullitt.

The rule by which to determine whether the warehouse is to be regarded embraced by the mortgage of Olds is, "that fixtures attached to the realty after the execution of a mortgage of it becomes a part of the mortgage security, if they are attached for the permanent improvement of the estate, and not for a temporary purpose; or if they are such as are regarded as permanent in their nature, or if they are so fastened or

attached to the realty as that the removal of them would be an injury to it." Although Spalding, at the time he commenced the erection of the warehouse, was not the owner of the lot, nor had in fact openly made his election to purchase it, yet considering the character and cost of the building, the option to purchase the lot which he had secured by his contract with Mrs. Bullitt, and the special mention of the warehouse in the mortgage to Olds, it is evident it was intended by him to be attached as a permanent improvement of the estate which he subsequently purchased. And as the liability of Olds was incurred to enable him to erect the building, and upon the faith it, as part of the realty, would constitute a security against loss, we think it was properly adjudged subject to his mortgage.

Though excepted to at the time, counsel do not in argument insist upon a reversal upon the ground Baumeister was adjudged to have a prior lien upon the rents. Nor do we think there was error on that account. For neither of the other mortgages in terms operated upon or related to the rents, as was the case of the mortgage to Baumeister, and consequently neither of them created a lien upon any thing besides the property mortgaged.

The judgment is affirmed.