## Yellow Chief Coal Company's Trustee v. Johnson, et al.

(Decided November 11, 1915.)

### Appeal from Johnson Circuit Court.

1. Vendor and Purchaser—Waiver of Lien—Purchase Price.—Where, under a prior agreement, vendees in a deed to a corporation accept stock of the corporation as part payment for a conveyance of land, and the conveyance recites that the consideration is all paid and the rights of creditors and subsequent mortgagees intervene it was error to adjudge the vendees a purchase money lien.

2. Contracts—Option to Purchase—Real Estate.—A contract for an option to purchase real estate at an agreed price within a specified time may be sold, assigned or mortgaged.

3. Estoppel—Estoppel by Conduct.—Where a person executes an obligation to a corporation he can not in an action on it by the corporation deny that such a corporation had an existence, nor can he set up as a defense that the corporation had no power to contract, unless the contract be such as is expressly forbidden by law.

H. R. DYSARD for appellant.

C. B. WHEELER and J. K. WELLS for appellees.

OPINION OF THE COURT BY JUDGE NUNN.—Reversing.

The appellees, Leonard and Charles Johnson, were plaintiffs below in separate actions. By an agreed order the actions were consolidated and tried together. Separate judgments were rendered against the Yellow Chief Coal Company, whereby Charles Johnson recovered $5,625, and Leonard Johnson recovered $3,375. The court also adjudged a lien upon certain lands for the payment of each judgment and ordered a sale of the lands for that purpose. Pending the action the coal company was adjudged a bankrupt in the United States District Court for the Eastern District of Kentucky, and the trustee, who intervened, brings this appeal. Except

in the amounts claimed the actions of Leonard and Charles Johnson are identical.

In the year 1909, James M. Lively, of New York, came to Johnson county, and started negotiations with the appellees, and others, for the purchase of coal lands on Bobbs branch in that county. Upon his return to New York, the owners made a proposition in the form of a letter, agreeing to sell their lands at $25 per acre, one-third to be paid in cash, and the balance in one and two years. In November, 1909, Lively returned to Johnson county, in company with Henry Taylor, and after further negotiations procured, on the 30th day of that month, separate writings or options from Charles and Leonard Johnson, whereby Charles agreed to convey 300 acres and Leonard agreed to convey 180 acres. The consideration was $25 per acre. The options recited that Taylor and Lively were to organize a company, and the conveyances were to be made to that company within 60 days. One-third of the consideration was to be paid in cash when the conveyances were made, and the remaining two-thirds "to be paid for in the first mortgage 20 year 5% sinking fund bonds of said company, at the rate of 80% on their par value." During the interval the appellees agreed to furnish an abstract of title. The options also contained this clause:

"It is further provided, that the vendor shall have the option, at any time after the expiration of eighteen (18) months from the delivery of such bonds, and before the expiration of twenty-four (24) months, to sell such bonds to the company so organized at the price of ninety (90) per cent. of their par or face value; and the said company shall, within sixty (60) days after such notice, take up said bonds and pay therefor such price."

In the meantime, the Johnsons were having abstracts made and Taylor and Lively proceeded with the organization of the Yellow Chief Coal Company, which was tentatively formed by the subscribing stockholders on the 1st of January, 1910. While so organized the company took an assignment of the options executed to Taylor and Lively. On that date the company executed and acknowledged a mortgage or deed of trust to secure an issue of first mortgage bonds of $500 each, aggregating $100,000. The mortgage covered all the lands upon which Taylor and Lively had secured options, including the lands of appellees. January 29th, 1910, was the last

of the 60 days on which the option to purchase might be exercised, and on that day the articles of incorporation of the Yellow Chief Coal Company were filed for record in the Johnson county court clerk's office, as well as the mortgage or deed of trust referred to.  On the same day the Johnsons executed and delivered their deeds to the company, which were then recorded, conveying the lands which they had theretofore optioned, and the consideration was paid therefor as stipulated in the option, viz.:  One-third cash, and the balance by delivery of first mortgage 20 year 5% bonds, that is, a sufficient number of them at 80 cents on the dollar to equal in amount the balance of the purchase price.  The deeds, however, did not recite the whole consideration, or the manner of payment.  The consideration named was "the sum of $10 and other considerations in hand paid."  It was the ordinary form of general warranty deed, without reservations or limitations of any kind, except an exclusion of two small surveys.  No question about the exclusions is involved in this controversy.

On the 11th of February, 1910, a certified copy of the articles of incorporation were filed for record with the Secretary of State.  On April 18, 1911, at a stockholders' meeting, a resolution was adopted ratifying the mortgage and again declaring it to be the act and deed of the corporation.

By the sale of bonds secured by the mortgage, executed and recorded in the way already explained, the company procured funds with which to develop the property, and which it commenced to do as soon as titles were acquired.  The appellees held their bonds and drew interest thereon semi-annually for two years.  At that time it became apparent that the company was in failing circumstances.  It was unable to pay about $5,000 which it owed for merchandise supplied by wholesalers to its mine commissary.  In February, 1912, appellees filed their suits against the Yellow Chief Coal Company, and averred that it was a corporation "duly organized and existing under and by virtue of the laws of Kentucky * * * and was organized for the purpose of taking over said property." (Referring to the land in question.) After setting up the terms of the option, they alleged that when they made the contract and agreed to accept the bonds as therein stipulated "the defendants (Lively and Taylor) represented to plaintiff that the mortgage se-

curing the same included only enough bonds to cover the purchase money on this and other tracts adjoining it, bought by defendants as aforesaid, and upon this representation, and believing it to be true, plaintiff agreed to accept same under the terms aforesaid.'' They alleged that said representation was falsely made for the fraudulent purpose of cheating plaintiffs, for at that time Taylor, et al., intended to, and the company did, issue bonds aggregating $100,000, ''which was more than four times the amount of purchase money for land as aforesaid.'' It is further alleged that before the expiration of 24 months they gave to the company notice of their desire to sell the bonds so held by them at the price of 90 cents on the $1, and the company failed and refused to purchase or pay for the bonds, or any part thereof, ''and, therefore, the full amount therefor is now due, just and owing to plaintiff * * * and plaintiff has a purchase money lien upon said land to secure the payment of said sum which should be enforced by a sale thereof.''

By an amended petition, they say that the corporation was not in fact organized with power to do business until February 11, 1910, but that Lively and Taylor, when the deed was demanded on January 29th, falsely and fraudulently represented that the corporation had been organized and that the ''plaintiff, believing said representations to be true, and believing he was legally bound to execute said deed, signed and acknowledged the deed mentioned and set out in the petition, but with the express understanding that the company, which he thought was then organized and existing, would pay the purchase money on said land as mentioned and set out in said (option) contract.'' It is further alleged that at the time the company executed the mortgage or trust deed to secure the $100,000 bond issue, the plaintiffs and other landholders had not executed their deeds for any of the land covered by the mortgage, and the company ''had no title except the contract aforesaid, which was executed by the plaintiff and other vendors to the defendants, James M. Lively and Henry A. Taylor,'' and for this reason, and because the company had no corporate existence, it is argued that the mortgage and bonds are void, and that the bondholders have no lien of any sort. They pray for a cancellation of their deeds or else that they be adjudged to have a prior lien upon the lands they conveyed to secure the balance of their purchase money.

The trustee, in behalf of the creditors and the bond-holders, intervene. They allege, in substance, that the bonds were issued and purchased in good faith, and that the bondholders, including the Johnsons, have a lien by virtue of the mortgage, but assert that the Johnsons have no purchase money or other prior lien, and plead that the Johnsons are estopped from asserting or claiming any lien for purchase money after having recited in the deed of conveyance that the consideration had been fully paid, and after having accepted the bonds of the company as payment. For the creditors, it is said, they extended credit in good faith, and, in substance, the plea of the bondholders is relied upon. We are of the opinion that the court erred in rejecting the plea of the creditors and bondholders, and erred also in adjudging appellees a prior lien for purchase money.

The court properly held that the Johnsons failed to show such fraud as would entitle them to a rescission of the option contract or cancellation of the deed. And there is no justification for adjudging them a priority of lien over innocent creditors and bondholders. No relation of trust or confidence is shown as would impose upon Lively or Taylor, or the other promoters or organizers of the company, a duty to protect the interests of the appellees. They were trading at arm's length, and the contracts entered into were carried out to the letter, except the final redemption of the stock. The obligation of the company in that regard is not disputed.

The mortgage was recorded in Johnson county on the day the deeds were delivered, and it showed the entire bond issue and the acreage covered. The company did pay for the land "as mentioned in said (option) contract." The Johnsons made no complaint until the company got in failing circumstances, two years later.

The fraud relied upon to vitiate the option contract and deed is that the first mortgage bonds were to be issued only in an amount sufficient to pay for the land. The option contract which they signed contained no such stipulation, and it is nowhere alleged that anything was left out of the contract. The bonds showed on their face that they were part of a series, the whole number of which aggregated $100,000. These bonds were accepted when their deeds were written and delivered. The transaction took place in the office of their attorney, and their attorney, a relative, was there for the purpose

of advising them and protecting their interests. There is no pretense that they were ignorant or unlettered men. They retained these bonds for two years and drew the interest thereon, and all the time they knew, or must have known, that they were part of an issue far in excess of the amount which they now insist was the limit agreed upon. The facts alleged merely show an obligation on the part of the company to redeem their bonds at 90 cents on the $1. It may be that the company is not now able to make its promise good, but that is not ground for cancelling the deed, nor is it a badge of fraud. The deeds which were made to the company recited that the consideration was fully paid, and it was. The bonds accepted as part consideration were a vendable commodity, and the option contract obligated the vendors to accept them as part consideration, and they did accept them when they executed the deed. Clearly, whatever cause of action they have is upon the bonds, and their rights and remedies are the same as the other bondholders.

There is no merit in appellee's claim for rescission upon the plea that at the time they made the deeds the corporation was not duly or completely organized. The petition expressly alleged that it was duly organized for the purpose of taking over this land, and the option contract stated that the company was to be organized, and during the next 60 days one was organized, and on the day the deed was made its charter was filed for record in the county court clerk's office, as required by law, and in 12 days thereafter record had been made of it in the office of the Secretary of State. While it is true it accepted the conveyance before the organization was complete, yet, as between the parties to the conveyance, it was valid. Miller v. Flemingsburg & Fox Springs Turnpike Co., 109 Ky., 475; Bank v. Mathews, 98 U. S., 621.

"The conveyance of land to an intended corporation before its organization will take effect when its organization is completed. * * * The fact that a corporation has been irregularly organized will not be sufficient to render invalid the title to land conveyed by it in good faith." 3rd Thompson on Corporations, section 2372.

Section 566 of the Kentucky Statutes provides:

"No corporation organized under this chapter shall be permitted to set up or rely upon the want of legal organization as a defense to any action against it; nor shall any person transacting business with such corporation,

or sued for injury done to its property, be permitted to rely upon such want of legal organization as a defense ''

It has been repeatedly held by this court that where a person executes an obligation to a corporation he can not, in an action on it by the corporation, deny that such a corporation had an existence. Lail v. Mt. Sterling Coal Co., 13 Bush, 32; Jones v. Bank, 8 B. Mon., 122. Nor can he set up as defense that it had no power to contract, unless the contract be expressly forbidden by law. Mason v. Lodge, 106 Ky., 838, 21 R., 493, 46 S. W., 674; Blitz v. Bank, 21 R., 1554, 55 S. W., 697; Oliver v. Louisville Realty Co., 156 Ky., 628, 161 S. W., 570.

It is a general rule that a mortgage of property to be acquired *in futuro* is void against mortgagors, creditors or purchasers for value. Bank of Louisville v. Baumiester, 87 Ky., 6, 7 S. W., 170, 9 Ky. L. R., 842; Manly v. Bitzer, 91 Ky., 596, 16 S. W., 464, 13 Ky. L. R., 166, 34 Am. St. Rep., 242; Hutchison, McChesney & Co. v. Ford, 9 Bush, 318. But the rule has no application here, for the corporation did have such an estate in the land as could be conveyed by mortgage. It was the owner by assignment of the option contracts, and as expressly held in the case of Bank of Louisville v. Baumiester, *supra,* a contract for an option to purchase real estate at an agreed price within a specified time may be sold, assigned or mortgaged. Section 2341, Kentucky Statutes. When the contract was completed and the legal title taken it inured to the benefit of the mortgagees, who are the bondholders in this case.

The judgment is reversed for proceedings consistent with this opinion.