[14391. Department One.—June 3, 1893.]

JAMES B. RANDOL, Appellant, *v.* H. L. TATUM
ET AL., Respondents.

Landlord and Tenant — Bond to Secure Rent — Discharge of Sureties — Tender by Assignee without Deposit — Breach of Covenant not to Assign. — The sureties upon a bond given by a lessee to secure the payment of rent are discharged by a tender of rent by an assignee of the term, although such rent was not deposited in compliance with the provisions of section 1500 of the Civil Code, and notwithstanding the assignment was made in violation of a covenant not to assign the lease without the written consent of the lessor.

Id. — Waiver of Forfeiture of Lease — Acceptance of Rent from Person not Owner of Term. — The forfeiture of a lease for breach of a condition not to assign the lease without the written consent of the lessor is waived by the acceptance of rent, *eo nomine*, from any one after knowledge of an assignment of the term without the lessor's consent, though the ownership of the term is disputed, and the rent is paid by one in possession who is not the real owner of the term.

Id. — Affirmance of Lease after Assignment — Action against Sureties. — The lessor affirms the continuance of the lease by bringing a suit to recover rents which accrued under it, after an assignment made to a second assignee without his consent, and cannot claim that such second assignee acquired nothing by its assignment.

Id. — Breach of Condition and Covenant not to Assign — Right of Lessor — Option to Forfeit Lease — Effect of Assignment. — Where an assignment without written consent of the lessor is a breach both of a condition and of a covenant not to assign, the lessor has only the option to forfeit the lease for breach of the condition, and has not the option of declaring the assignment void. An assignment in violation of the covenant is not void, and does not avoid the lease, but passes the term, and the only remedy for such violation is an action for breach of the covenant.

Id. — Offer of Performance — Exoneration of Surety — Construction of Code — Deposit no Part of Offer. — Under section 2839 of the Civil Code, providing that an offer of performance "duly made as provided in this code," no reference is had to section 1500 in regard to the deposit of a tender, which relates not to an offer of performance of a contract, but to the absolute extinguishment of a debt, and such deposit is no part of the offer which exonerates a surety.

Appeal from an order of the Superior Court of the City and County of San Francisco granting a new trial.

The facts are stated in the opinion.

*Pringle, Hayne & Boyd,* for Appellant.

The consent given by the lessor to assign to Tatum was not a discharge of the covenant against assigning, but only a modification of it. The case of *Chipman* v. *Emeric*, 5 Cal. 49, which stands upon *Dumpor's Case*, 4 Coke, 119, upon which the respondents rely, is not authority to the contrary, as that case

applies to a condition broken. (7 Am. Law Rev., 616, 628, 635; *Brummell* v. *MacPherson*, 14 Ves. 173; *Dougherty* v. *Matthews*, 35 Mo. 520; 88 Am. Dec. 126; *Gannett* v. *Albree*, 103 Mass. 372; *McKildoe* v. *Darracott*, 13 Gratt. 278, 286; 1 Taylor on Landlord and Tenant, p. 487.) Even if the whole covenant were discharged the tender made would not discharge the sureties, as it was not made in accordance with the code. (Civ. Code, secs. 1500, 2839.) The assignment to Tatum did not release Davis from his original principal obligation as lessor, and did not change the contract so as to release the sureties. (*Oswald* v. *Fratenburgh*, 36 Minn. 270; Civ. Code, sec. 2819.) The acceptance of rent from Gloster and the refusal to accept it from Mrs. Billings was not an eviction. (Taylor on Landlord and Tenant, sec. 309, 8th ed.; *Oligvie* v. *Hull*, 5 Hill, 52; *Morris* v. *Tillson*, 81 Ill. 607; *Lynch* v. *Baldwin*, 69 Ill. 210.)

*J. P. Langhorne*, for Respondents.

The question as to whether or not Randol's consent to the assignment of the lease broke forever the covenant against assignment is not material on this appeal, but if material, such consent waived the covenant forever. (*Chipman* v. *Emeric*, 5 Cal. 49; 63 Am. Dec. 80; *Chalker* v. *Chalker*, 1 Conn. 79, 91; *McCormick* v. *Stowell*, 138 Mass. 431; *Pennock* v. *Lyons*, 118 Mass. 92; *Dougherty* v. *Matthews*, 35 Mo. 520; 88 Am. Dec. 126; *Heeter* v. *Eckstein*, 50 How. Pr. 445; *Murray* v. *Harway*, 56 N. Y. 337; *Seifke* v. *Hoch*, 31 How. Pr. 383; Co. Litt. 219 *b*; *Whitchcot* v. *Fox*, Cro. Jac. 398; *Dumpor's Case*, 4 Coke, 119; *Brummell* v. *MacPherson*, 14 Ves. 173; *Macher* v. *Foundling Hospital*, 1 Ves. & B. 191; *West* v. *Dobb*, 9 Best & Smith, 755; *Leeds* v. *Compton*, 1 Rolle's Abr. 472.) Mr. Randol, having before the default in the rent sued for notified E. A. Billings that he would only recognize the trespasser, D. M. Gloster, as tenant of the premises, and such notice having never been retracted, either before or during the non-payment of rent sued for, such act of Randol's relieved Billings from any obligation either to tender or to pay the rent thereafter accruing. (Civ. Code, secs. 1440, 1511, 1515; *Houghton* v. *Steele*, 58 Cal. 421; *Marshall* v. *Craig*, 1 Bibb, 379; 4 Am.

Dec. 647; *North* v. *Pepper*, 21 Wend. 638 ; *Meserole* v. *Archer*, 3 Bosw. 376.) Notwithstanding the express repudiation by Randol of E. A. Billings, as his tenant, she offered to pay and tendered the rent sued for, which tender was refused by Randol, and the sureties are discharged by reason of such unaccepted tender. (Brandt on Suretyship, sec. 295; *Sharp* v. *Miller*, 57 Cal. 415; *Hayes* v. *Josephi*, 26 Cal. 535; *Curiac* v. *Packard*, 29 Cal. 194; *Solomon* v. *Reese*, 34 Cal. 36; 91 Am. Dec. 670; *Johnson* v. *Ivey*, 4 Cold. 608 ; 94 Am. Dec. 206 ; *McQuesten* v. *Noyes*, 6 N. H. 19; *Sears* v. *Van Dusen*, 25 Mich. 351; *Joslyn* v. *Eastman*, 46 Vt. 258; *Musgrave* v. *Glasgow*, 3 Ind. 31; *Johnson* v. *Mills*, 10 Cush. 503. See *Kingsbury* v. *West*, 61 N. Y. 359; *Brooks* v. *Baker*, 11 N. Y. Week. Dig. 160.) The assignment of the lease by George A. Davis and Company, the original lessee, with the consent of Randol, the lessor, to Tatum, released the latter as surety, for his contract as surety was merged in that of lessee. Bowen, the other surety, was also released by the act of the lessor consenting to such assignment to Tatum, for Bowen's right of contribution against his co-surety Tatum was thereby taken away. (Civ. Code, secs. 2819, 2831, 2840, 2844; *People* v. *Buster*, 11 Cal. 220; *Montgomery* v. *Sayre*, 91 Cal. 210; *McAlester* v. *Landers*, 70 Cal. 79.) There was an implied covenant by the landlord of quiet enjoyment and peaceable possession. (Taylor on Landlord and Tenant, sec. 304; *Dengler* v. *Michelssen*, 76 Cal. 125; *Mack* v. *Patchin*, 42 N. Y. 167; 1 Am. Rep. 506; *Field* v. *Herrick*, 10 Bradw. (Ill.) 591; *Owens* v. *Wright*, 5 McCreary, 642.) The acts of Randol in recognizing and stating in writing that Gloster was his tenant, expressly repudiating Billings, receiving rent from Gloster, and refusing it from Billings, constituted a breach of his covenant for quiet possession and enjoyment of the premises. (*Grabenhorst* v. *Nicodemus*, 42 Md. 236; *Leadbeater* v. *Roth*, 25 Ill. 587; *Levitzky* v. *Canning*, 33 Cal. 307; *Royce* v. *Guggenheim*, 106 Mass. 201; 8 Am. Rep. 322; *Dyett* v. *Pendleton*, 8 Cowen, 727; *Berrington* v. *Casey*, 78 Ill. 317; *Hayner* v. *Smith*, 63 Ill. 430.)

Temple, C. — Plaintiff appeals from an order granting defendants a new trial.

The action is against sureties upon a bond given by the lessee to recover rent for the period of nine months, in the payment of which it is alleged default has been made. Defendants claim that the rent has been duly tendered month by month as it fell due, and therefore there has been no default.

There was a covenant in the lease to the effect that the lessee would not assign without the written consent of the lessor; also, a condition that if default were made the landlord might re-enter and take possession without previous notice or demand.

The bond was conditioned that the lessee "shall in all things stand to and abide by and well and truly keep and perform the covenants, conditions, and agreements in the written lease contained on his or their part, to be kept and performed at the time and in the manner and form therein specified," etc. The lease bore date July 17, 1882, and was for the term of ten years. March 4, 1885, the lessor gave the tenants, George A. Davis and Company, written permission to assign to H. L. Tatum, who was one of the sureties and is a defendant herein, and the lease was assigned in accordance with the permission on the same day. Tatum did not take possession of the demised premises, and it was evidently not expected that he would; for plaintiff testified that he understood that Davis was financially embarrassed, and that Tatum, as surety, desired the assignment so that he might have no trouble with the creditors of Davis. June 9, 1885, Tatum assigned to H. G. Billings, who entered under the lease and took posession of the premises, and on the 18th of the same month assigned to his wife, E. A. Billings. The last two assignments were made without the consent of the lessor in writing or otherwise. E. A. Billings carried on the business of selling agricultural implements, which were stored on the demised premises, which was a warehouse. The Gloster and Davis Implement Company was a copartnership, composed of D. M. Gloster and M. F. Lauden. They acted as the agents of E. Billings in the sale of the goods kept by her at the warehouse. Davis had no interest in the business, but his name was retained to secure the good will of the business formerly conducted by George A. Davis and Company, and Davis was employed for a few months as clerk.

The agents were not let into possession of the warehouse, but

were furnished with duplicate keys so that they could have access to it when necessary. It was understood that E. A. Billings retained possession and H. E. Billings attended to her part of the business as her agent. Rents were paid by E. A. Billings regularly as they fell due until April 15, 1887, either by H. E. Billings as her agent or by the Gloster and Davis Implement Company, and by them charged to her. Receipts were given in the name of George A. Davis and Company until February 15, 1886, and thereafter until December, 1886, in the name of the Gloster and Davis Implement Company, and thereafter until April, 1887, in the name of H. G. Billings, agent, and thereafter until September, 1887, in the name of D. M. Gloster.

The plaintiff claims and the court found that plaintiff supposed that Davis was a member of the firm of the Gloster and Davis Implement Company until April, 1887, when he admits that he was informed of the assignments and the claim of E. A. Billings. The rents sued for accrued after that time. H. E. Billings testified that he informed plaintiff of the facts as early as December, 1886, but the finding of the court that plaintiff did not know that Davis was not a member of the firm is not attacked on the motion for a new trial, as unsupported by the evidence.

The partnership, styled the Gloster and Davis Implement Company, was dissolved about March, 1887, and Gloster in the night time forcibly entered and took possession of the warehouse, ousting E. A. Billings, and kept possession until June, 1888, when E. A. Billings recovered possession through legal proceedings in which she claimed under the lease from plaintiff.

The rent due in April, 1887, was paid by D. M. Gloster, and also by E. A. Billings through H. G. Billings, agent. The first payment was by Gloster, and then Billings tendered the rent to Randol, showed him the lease and the various assignments, and was told by Randol, in ignorance, that the rent had already been paid, to pay it to his clerk, which was done. Upon discovering the fact of the double payment plaintiff offered to return to Billings the rent he had paid, and when Billings refused to receive it deposited the amount in a bank, and notified Billings of the fact in writing, stating that he had never recognized

Billings except as the messenger of the Gloster and Davis Implement Company, or of D. M. Gloster, and did not wish to deal with him in the future in any capacity, adding: "The Gloster and Davis Implement Company and D. M. Gloster, as the successor of said company, are the only ones whom I have and do now recognize as my tenants," etc.

As a matter of fact, neither the company nor Gloster had any interest under the lease, or any color of right, but Billings was the real owner of the term, and had paid the rent up to that month when Gloster forcibly took possession. He claimed, however, that the partnership had been in possession and had paid the rent, and that he had succeeded to the rights of the partnership.

Plaintiff claims that in accepting rents prior to April, 1887, he did so in ignorance of the fact that there had been a second assignment; but there is no question but that he was fully advised at that time. He nevertheless continued to receive rents from Gloster, and to refuse them from E. A. Billings until August, 1888, when Gloster, having been sued by Billings to recover possession, ceased to pay. E. A. Billings, however, notwithstanding the refusal and the notice that plaintiff would not recognize her or receive rents from her, continued month by month to tender the rent to plaintiff at the time it fell due, under the terms of the lease, during the entire period in which the rents sued for accrued. Plaintiff invariably refused to accept it from her, saying that he would receive rents only from Gloster, because he was in possession. E. A. Billings did not, when plaintiff refused to receive her money in payment of rents, deposit the same or any of it in a bank or elsewhere, in compliance with the provisions of section 1500 of the Civil Code.

Motion for a new trial was made by defendants upon several grounds, including the claim that the findings are not sustained by the evidence, under which head many specifications are made. Also upon the ground that the judgment upon the findings should have been for defendants.

One specification in respect to the insufficiency of the evidence was the finding to the effect that plaintiff when he received rents from Billings as agent, and from the Gloster and Davis Imple-

ment Company, believed that Davis was a member of that company, and that Billings was agent of the company or of Gloster. It cannot be denied that the evidence on this point is conflicting. Upon the theory adopted by counsel on both sides, and by the court, it was most material; for it tended to show that the plaintiff had not recognized the lease as continuing after knowledge of the second assignment. Indeed, the findings consist solely of probative facts, except as to finding No. 1, to the effect that all the allegations of the complaint are true. This, therefore, stands in the place of a finding, that E. A. Billings when she tendered the rent was not the owner of the term. Upon the theory adopted by all parties this was the turning point in the case.

Appellant's counsel say it is but a probative fact tending to establish the ultimate fact that plaintiff did not intend by the receipt of rent to release the sureties; but there was no issues in the case as to whether plaintiff intended to release the sureties. It was not claimed that he did, nor did it matter. It seems to me that if he accepted rent from any one *eo nomine,* as he admits he did after knowledge of the second assignment, it was enough; but that was not the view adopted below. As we must presume, therefore, that the court below concluded that one of the findings upon which judgment was based was unsupported by the evidence, and has granted a new trial, the order ought not to be reversed here, at least unless we are convinced that the other findings will support the judgment.

As the plaintiff did not attempt to end the term, but, on the contrary, affirmed its continuance by bringing this suit to recover rents which accrued under it, he could not claim that the second assignee acquired nothing by the assignment.

The lessor did not have the option of declaring the assignment void, but it was his privilege, if he desired to avail himself of it, to avoid the lease and end the term; that is, if the condition continued after the first assignment. Whether it was renewed by the first assignment made with the consent of the landlord, we do not therefore inquire.

The lease, as we have seen, contained both a condition that the term might be forfeited if assigned without consent and a covenant not to assign; but an assignment in violation of the

covenant was not absolutely void. If so, it would not be also a condition, for that would be the creation of an estate conditioned upon an impossible event. But if authority is needed on such a proposition it can be had. The point was expressly adjudged in *Paul* v. *Nurse*, 8 Barn. & C. 486. The effect of this decision is thus set out in Smith's Landlord and Tenant, 117: "The landlord sued the assignee of the lessee for non-payment of rent. The defendant pleaded that before the rent became due he had assigned to a third person; and to this the plaintiff replied that there was a covenant in the lease by which the lessee had covenanted for himself, his executors, administrators, and assigns, not to assign without the consent of the lessor, and that no consent had been given. It was held that this replication was bad on demurrer, since the covenant by the lessee did not render the assignment by the assignee void, and the liability of the defendant as assignee was at an end when he parted with the estate. The court intimated that the landlord's remedy might be on the covenant not to assign, meaning apparently that the lessee might be sued on it in respect of the assignment by the assignee, if this assignment could be brought within the terms of the covenant, by which the lessee only covenanted for himself, his executors, administrators, and assigns, that *he, his executors, or administrators* would not assign."

In *Webster* v. *Nichols*, 104 Ill. 160, it is said: "The clause in the lease providing that the premises shall not be assigned without the written assent of the lessors, is clearly for the benefit of the lessors only. It does not render the assignment when otherwise made absolutely void, but voidable only at the option of the lessors or their representatives. But even if the lessors, instead of here attempting, as they now are, to enforce rights under an assignment otherwise made, were attempting to have such an assignment declared void, they could not succeed. They have knowingly accepted rent from Abiah G. Webster since she has been in possession as purchaser from Gage, and this concludes them, for it is well settled that 'any act done by a landlord knowing of a cause of forfeiture by his tenant, affirming the existence of the lease, and recognizing the lessee as his tenant, is a waiver of such forfeiture.'"

Although in that case the court uses the expression that the landlord has the option to avoid the assignment, the whole quotation shows that the meaning is that the landlord may end the term. The question was whether the assignment was valid. The landlord not only refused to consent to the assignment, but refused to recognize the assignees as her tenants, and received rent from them only as subtenants.

In *Den* v. *Post*, 1 Dutch. 289, the tenant having assigned in violation of such a covenant, the landlord re-entered and took possession. There was no stipulation that the landlord might so enter on the breach of the covenant. It was held that the assignee could recover possession from the landlord, who contended that the assignment was void. The court said: "No ejectment can be maintained by the landlord for a mere breach of covenant not coupled with a proviso for a re-entry. His only remedy would be an action for breach of covenant. Neither the lease nor the assignment is avoided by reason of the breach of covenant. (*Willson* v. *Phillips*, 2 Bing. 13; Platt on Covenants, 424.)"

Plaintiff's counsel do not really contend that the assignment was void, and did not pass the term. Their contention seems to be, although not so expressed, that the sureties cannot rely upon an offer to perform, made by one who could have no rights under the lease save by a violation of its covenants. But the first question here is, Has there been a failure on the part of the tenant to perform the covenant to pay rent? If E. A. Billings was the legal owner of the term, she was the proper person to pay the rent, and if her offer was performance there has been no breach of that condition or covenant. Has there been then such breach of the covenant to pay rent as will make the sureties liable? Admitting that E. A. Billings was the owner of the term, and we have concluded she was, there seems hardly room for doubt upon this point. Leaving out of view any right plaintiff may have had to avoid the lease for the violation of the covenant not to assign, could he have ousted the tenant because she did not deposit the money in a bank and notify him of the fact? No one, I think, would have the hardihood to contend that he could. If he could not, then it must follow that there has been no breach of the covenant to pay rent and

the sureties are not liable.    We are not now treating of a tender which would extinguish a debt, nor inquiring whether there has been such a tender of money due as will relieve sureties from liability, but whether there has been a breach of a covenant.

Plaintiff's contention is founded upon the wording of our code, which he claims has changed the common-law rule.    It is admitted that independently of the lease an offer to pay and a refusal by the creditor will release the sureties; although the tender were not kept good.    Keeping this common-law rule in mind and that the code is in general intended to declare existing rules, I think it plain that the code has not changed the rule in this respect.    Section 2839 of the Civil Code is as follows: "Performance of the principal obligation, or an offer of such performance, duly made as provided in this code, exonerates a surety."    It is claimed that the phrase, "duly made as provided in this code," refers to section 1500 in regard to tender, and necessitates a deposit or it will not amount to an offer.

Section 1500 does not provide what shall be sufficient as an offer of performance of a contract.    It is an advance upon the common-law rule that a debtor must keep his offer good, but cannot extinguish the obligation in providing a mode for the absolute extinguishment of the debt.    The other sections of the chapter define what shall constitute such performance, or offer to perform, as will prevent the person making the offer from being in default in the performance of his contract, and will give a right of action in case performance is not accepted.    But section 1500 itself, read in the light of the prevailing rule, clearly shows that the deposit is no part of the offer.    The offer shall have a certain effect if the deposit is made.    This is made more obvious by the other provisions in regard to an offer.    Section 1502, for instance, provides that the title to the thing offered passes to the creditor if the debtor at the time signifies that such was his intention.    (Sec. 1504.)    The offer of payment duly made, though the title of the thing offered be not transferred, stops the running of interest.    See section 1511 as to what will excuse an offer. Certainly the existence of the reasons there stated would not extinguish an obligation to pay money.    (Sec. 1515.)    A refusal is equivalent to an offer of performance.    It could not be equivalent to an offer followed by a deposit, as provided in section 1500.

Even if the obligation of defendants must be regarded as that of sureties for the payment of a debt, still I think the tender sufficient to discharge the sureties. I recommend that the order be affirmed.

SEARLS, C., and VANCLIEF, C., concurred.

For the reasons given in the foregoing opinion, the order appealed from is affirmed.

HARRISON, J., GAROUTTE, J., McFARLAND, J.