[L. A. No. 253.   Department Two.—December 16, 1897.]

MARIANO GARCIA, Appellant, v. PETER GUNN et al., Respondents.   G. A. MACOMBER, Intervenor.

CLAIM AND DELIVERY—RIGHT OF POSSESSION—SUBSEQUENTLY ACQUIRED TITLE. To sustain an action of claim and delivery of personal property, the plaintiff must have a right to the immediate and exclusive possession thereof at the time of the commencement of the action, through some general or special property therein, though it is not essential that plaintiff should ever have had actual possession of the property claimed. A subsequently acquired title is not alone sufficient to sustain the action.

ID.—SKINS OF WILD GOATS—LEASE OF ISLAND BY MEXICAN GOVERNMENT— TITLE OF ASSIGNEE—ASSIGNMENT WITHOUT CONSENT—BREACH OF CONDITION—SUBSEQUENT CONSENT.—A lease of an island by the Mexican government to the assignor of plaintiff, conferring a right to utilize the wild goats thereon, with a right of selection for the purpose of killing them in moderation, and containing a condition against assignment of the lease without the consent of the lessor, conferred upon the lessor only the option to forfeit the lease for breach of the condition, and the assignment thereof to plaintiff without previous

consent of the lessor was not void, but passed the term to plaintiff, and upon subsequent consent of the Mexican government to the assignment, the assignee took all the rights of the lessee as of the date of the assignment, and became entitled to the immediate and exclusive possession of the skins of wild goats taken from such island subsequent to the date of the assignment.

ID.—EFFECT OF RESERVATION NOT SELECTED—CONDITION SUBSEQUENT—OPTION OF GOVERNMENT.—A reservation in the lease of the island of fifty hectares for public user, not designated or selected, but to be decided upon by the Mexican government, has the effect of a condition subsequent at the option of the government; and until the selection should be made by the government, the plaintiff had the right to the whole island, and to the control and right of possession of all the goats thereon.

ID.—TRESPASS AND KILLING OF GOATS—ELECTION OF REMEDY—CLAIM AND DELIVERY.—Although the plaintiff might have maintained an action of trespass for the action of trespassers in entering wrongfully upon the island and killing the goats and taking away their skins, he was not confined to that remedy; but such action was an interference with plaintiff's right of possession and control of all of the goats, which entitled him to elect to recover the possession of the skins in an action of claim and delivery; and it is immaterial that plaintiff had not the right to kill all of the goats killed by the trespassers.

ID.—DAMAGES FOR DETENTION—INTEREST ON VALUE OF PROPERTY.—Where the judgment allowed one dollar as damages for the detention of the property, it cannot also allow interest on the value of the property from the date of the taking, which, if it could be allowed at all, can only be allowed as damages for the detention.

APPEAL from a judgment of the Superior Court of San Diego County and from an order denying a new trial. George Puterbaugh, Judge.

The facts are stated in the opinion.

Works & Works, for Appellant.

M. B. Anderson, Leovy & Palmer, and George J. Leovy, for Respondents.

Henley & Costello, and D. M. Hammack, for Intervenor.

CHIPMAN, C.—Claim and delivery for certain four thousand and fifty-six goatskins of the value of twelve hundred and sixteen dollars and eighty cents.

The court found against the plaintiff and in favor of defendant Porter, upon the issue of ownership and right of possession;

it also found that the sheriff of San Diego county took the property from the possession of said Porter, and has since delivered it to plaintiff, who still retains it. The trial was by the court and judgment passed for defendant Porter, and this appeal is from the judgment and from the order denying a new trial, and is here on bill of exceptions.

It appears from the evidence that Guadalupe island is situated about two hundred miles south of San Diego and about the same distance off the shore of Mexico, and belongs to that republic; that large numbers of wild goats—estimated as amounting to twenty-five thousand—roam at will over this island, which contains about one hundred and eighty square miles. It appears without conflict that the skins in question were taken from wild goats, and were brought from that island by defendant Gunn at the instance of defendant Hunt and delivered to the latter in August, 1893, at San Diego, who sold them to defendant Porter.

The court made no finding as to where the skins came from, except that they were "not taken from Guadalupe island wrongfully"; nor as to where the goats, from which the skins were taken, were running when killed. It made no finding as to whether the skins were taken from wild goats, nor did it make any finding as to the lease under which plaintiff claims; nor as to its assignment, nor as to the rights of plaintiff thereunder. We are left in the dark as to the theory upon which the findings and judgment are founded as to these matters. They are, however, fully discussed in the briefs.

1. Defendants contend that at the time the suit was brought plaintiff was not entitled to the immediate and exclusive possession of the property. To sustain the action there must be such right, through some general or special property in the skins, although it is not essential that plaintiff should have ever had actual possession of them. A subsequently acquired title is not alone sufficient. (Wells on Replevin, sec. 94; Cobbey on Replevin, secs. 96, 100; *Cardinell v. Bennett*, 52 Cal. 476; *Fredericks v. Tracy*, 98 Cal. 658.)

Plaintiff claims under a lease of said island executed by the Mexican government to one Vilarasau, dated June 20, 1891. The lease provided that it should not be transferred or assigned with-

out the previous consent of the lessor, and was to run for twenty years.

On January 11, 1892, Vilarasau, at the City of Mexico, made a declaration, to which plaintiff affixed his signature before a notary public, to the effect that the said lease was entered into under instructions from and for the special benefit of plaintiff, and also then and there assigned the concession to plaintiff, the latter agreeing to fulfill the obligations of the contract undertaken by Vilarasau, and also to obtain the consent of the Mexican government to the assignment.

A document dated June 27, 1894, from the department of the interior, is in evidence, which apparently is addressed to Vilarasau in reply to his letter setting forth the facts contained in the assignment of January 11, 1892, to plaintiff (Garcia). This document of June 27, 1894, concludes as follows: "In reply, I declare to you that, taking into consideration what has been explained, this department approved the transfer, . . . . and will recognize him (Garcia) hereafter as the grantee of said agreement, with all the rights which may accrue from it." Plaintiff claims that this action of the government was conclusive and cannot be questioned by a stranger, especially by wrongdoers, in their defense. (Citing numerous cases.)

Defendants' position is, that Garcia when he brought the suit was not the proper party in interest; that by the laws of Mexico introduced in evidence, and the terms of the concession, such rights as thereby passed from the government became vested in Vilarasau as an individual, regardless of any private understanding he may have had with others; and the consent of the government to an assignment was a condition precedent to the vesting of such rights in another; and that plaintiff had not the right of possession when he brought the suit.

It seems to be the law that where there is a clause in a lease that it shall not be assigned without the previous consent of the lessor, and there is a breach of the covenant not to assign, the lessor has only the option to forfeit the lease for the breach of the condition, and that the assignment is not void but passes the term, and the only remedy is for breach of the covenant (*Randol v. Tatum*, 98 Cal. 390); and it has been held that the

assignment is voidable only at the option of the lessor or his representatives. (*Webster v. Nichols*, 104 Ill. 160.)

As the Mexican government not only did not proceed to have the lease forfeited because of the assignment, but consented thereto, it follows that plaintiff took the term *eo instante* of the assignment with all the rights of the lessee under it.

2. The question next is one of fact, namely: Were the skins taken from goats killed on the island? Upon this point the evidence is chiefly circumstantial, but cannot be said to be conflicting. Defendants claim that there is no evidence of this fact, and therefore plaintiff cannot recover. We do not deem it necessary to state this evidence fully. It has had careful examination. What view was taken of it by the trial court we do not know. If the learned judge held that plaintiff had no rights under the lease at the time the action was brought, it became immaterial whether the goats were killed on Guadalupe island or elsewhere, and this was probably the conclusion reached at the trial.

Defendants make no claim to the island adverse to plaintiff or otherwise; they make no claim to the skins except that they had a right to take them from wild goats running on this island; they offer no proof of ownership except that the skins were wild goat skins, and they remain silent as to where the goats were running when killed and skinned. We think the evidence established, *prima facie*, the fact that the skins were taken from wild goats running on Guadalupe island, and that enough was shown upon this fact to cast upon defendants the duty to show where they got the skins, if it was true that they came from some other island—a fact easily proven by them. The hunters from whom the skins were received by Gunn on Guadalupe island were trespassers. Unless they had a right to kill wild goats running there (which will be noticed next), they were wrongdoers in killing them.

3. Defendant Porter denies the ownership of the goatskins in plaintiff, but does not deny the taking; he claims: 1. "That the lease by its terms did not purport to give such rights, exclusive or otherwise, in reference to the wild goats on Guadalupe island, as to prevent others from hunting them, or as to make the product of such hunting by others the property of the lessee"; and

2. "That the laws of California and of the United States gener-- ally as to wild game was that the government held all wild game, without power of alienation, in trust for the people, and gave to the hunter the fruit of his labors." It is claimed by plaintiff that under the lease he had a property interest in the wild goats running upon this island, and that defendants invaded this right in taking away his property.

The property right to the wild goats was, without question, in the republic of Mexico—this is conceded by all parties. In the lease are the following provisions: "Art. 4. The lessee shall have the right to utilize the wild goats. . . . . Art. 5. The utilization of the wild goats and of the woods shall be in moderation so as not to destroy the one nor the other. The lessee obligates himself not to destroy nor to avail himself of all the wild goats and their young which should remain in favor of the government during the last two years. The government can name opportunely the inspector . . . . for the purpose of informing it of the condition of the woods and of the wild goats." It would seem to be obvious that the government passed to the lessee dominion over all the wild goats, with a right of selection for the purpose of killing them in moderation, and that it did not reserve to itself any control over them beyond that of inspection. But defendants say "the government reserves absolutely on each island an area of fifty hectares for public uses." (Mex. Stats., art. 29; Trans., fol. 184.) (A hectare is 2.7 + acres.) Also, "always reserving in the government the extension of the land which the law designates and in the place it decides upon." (Contract, art. 8; Trans., fol. 77.) Defendants claim that the record is silent as to how much land has been so granted and occupied on the island, and, as there was no segregation of these interests, it cannot be ascertained from the evidence that the goats were killed on plaintiff's portion, and there is a failure of proof. Defendants would have us assume that all these goats might have been killed on this reservation of about a hundred and thirty-five acres. The lease was for "the island of Guadalupe in the Pacific Ocean for the term of twenty years." The reasonable and fair construction of the reservation referred to is, that until the government should select the land reserved, plaintiff had the right to the whole island

and certainly to the control of all the goats thereon. The reservation was a condition subsequent and at the option of the government.

It is claimed by defendants that "wild game within a state belongs to the people in their collective, sovereign capacity; it is not the subject of private ownership, except so far as the people may elect to make it so." (Citing *Ex parte Maier*, 103 Cal. 482; 42 Am. St. Rep. 129.)

The contention of defendants was made the subject of very careful consideration in *Kellogg v. King*, 114 Cal. 378; 55 Am. St. Rep. 74. The section of our Civil Code (656) relating to ownership of wild animals was there given a construction, and the general doctrine relied upon here by defendants was found to be incorrect.

But it is claimed by defendants that plaintiff had no right under the lease to any specific goats; that while he had the right to utilize and kill some of them and in moderation, he did not have the right to all of them or to any particular ones, and that even though defendants were wrongdoers the action of replevin would not lie for the killing and taking away the carcasses or the skins; that the remedy, if there be any, is for trespass. Plaintiff was given dominion over all the goats, with the right of selection for the purpose of killing or other utilization; it was a right to the immediate possession of all the goats. It was not necessary that he should have the absolute ownership of all of them. His right of control over the possession of all, with the right of selection, would be invaded if a stranger could come in and slay goats at will. "Replevin is based on the supposition that plaintiff has a general or special property in the goods in dispute and a right to their immediate possession, and that defendant stands in the way of the exercise of this right." (Cobbey on Replevin, sec. 18.)

It certainly cannot be claimed that defendants could go upon that island and kill eight thousand goats and carry away their skins (as it appears was done) without materially disturbing plaintiff's right of possession and selection. While trespass would lie, we do not think plaintiff is confined to that remedy. The lease carried with it the goats on the island; they were a part of the leased property, and their utilization formed part of the

consideration for which rental was paid; the case would not be different if the animals had been cattle. Being part of the leased property, plaintiff had his action against anyone, even the lessor, who might take it out of his possession wrongfully. (Cobbey on Replevin, secs. 52-54.) Where plaintiff had a right to the use of property at will, he had a right to replevy it from a wrong-doer. (*Tandler v. Saunders,* 56 Mich. 142.) Where plaintiff had purchased five hundred head of cattle, part of a herd of several thousand, it was said by this court that replevin would lie against the owner of the herd for the purpose of enabling the vendee to select his five hundred, and that our action of claim and delivery is at least commensurate with the action of detinue at common law. *McLaughlin v. Piatti,* 27 Cal. 452.) The opinion in *Kellogg v. King, supra,* is instructive on the point as to the rights of plaintiff.

4. The judgment is claimed to be erroneous in that it allowed one dollar as damages for the detention of the property and also allowed interest on the value of the property from the date of the taking. This was error. (Code Civ. Proc., sec. 667.) If interest from the time of the taking can be allowed, which we do not decide, it cannot be allowed except as damages for the detention, and in the present case that damage was fixed at one dollar. The view taken of the case in this opinion makes it unnecessary to point out the specific findings which are not justified by the evidence.

The judgment and order appealed from should be reversed and a new trial granted.

Searls, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed and a new trial granted.

Garoutte, J., Harrison, J., McFarland, J.