[L. A. No. 11657. In Bank.—September 27, 1932.]

THEODORE S. CHAPMAN et al., Respondents, v. GREAT WESTERN GYPSUM COMPANY (a Corporation) et al., Appellants.

Neil S. McCarthy, Earl L. Banta, Charles E. R. Fletcher and William A. Barnhill for Appellants.

Gibson, Dunn & Crutcher, Henry F. Prince and Herbert F. Sturdy for Respondents.

THE COURT.—Defendants appeal from a judgment in an action for declaratory relief, decreeing that a certain mortgage held by plaintiff constitutes a lien on certain described real property prior to any claim of defendants. The facts are not materially in dispute, and are as follows:

In 1922 the Southern California Chemical Company, a California corporation, owned certain real property in the city of Los Angeles. On May 1st of that year the chemical company leased the property in question at a stipulated monthly rental for a period of three years to the Great Western Gypsum Company, an Arizona corporation. The lease contained the following provision:

"The Chemical Company hereby agrees that the Gypsum Company shall have, and does hereby give an option to purchase the herein demised premises at the dates, and for the sums following, to-wit:

"For the sum of $22,000.00 cash if said option is exercised on or before May 1, 1923;

"For the sum of $23,000.00 cash if said option is exercised on or before May 1, 1924; and

"For the sum of $24,000.00 if said option is exercised on or before May 1, 1925."

The lease expressly provided that the lessee should not let the premises nor assign the lease without the written consent of the lessor. Another clause provided that the lease should be binding upon and inure to the benefit of the successors and assigns of the parties, provided that no assignment should be made without the written consent of the lessor. The lease was properly recorded December 7, 1922.

In 1924 the lessee, the Great Western Gypsum Company, executed certain promissory notes in favor of Theodore S. Chapman, H. H. Merrick, E. M. Chapman, T. L. Chapman, J. Gorin and J. H. Eaton, and simultaneously therewith, on August 5, 1924, executed, as security for said notes, a mortgage upon certain real and personal properties in this state

and in the state of Nevada. Among the other properties included within the terms of the mortgage was "all of the right, title and interest of the mortgagor, in and to that certain Indenture of Lease made the first day of May, 1922, by Southern California Chemical Company . . . to the mortgagor herein, granting a leasehold estate with option to purchase that certain lot or parcel of land described as follows:" (Here follows a detailed description of the leased premises.) At the end of the provision containing the list of the properties included within the mortgage appears this clause: "It being the intention of the mortgagor to mortgage to the mortgagees, all of the property of the mortgagor now held by it, of whatsoever nature, real, personal or mixed, and wheresoever situate." This mortgage was properly recorded in Los Angeles County both as a real and chattel mortgage on August 16, 1924.

On August 9, 1924, H. H. Merrick, one of the mortgagees, conveyed and assigned all of his right, title and interest in and to the mortgage to DeWitt-Blair Realty Company. This assignment was properly recorded August 16, 1924.

On February 13, 1925, just a few months before the lease of the gypsum company was to expire, that company assigned, with the written consent of the lessor, all of its interest in and all of its rights under the lease to the DeWitt-Blair Realty Company. This assignment was properly recorded on February 13, 1925. The realty company was now one of the mortgagees of the lease and was also the assignee thereof. The trial court found, and under the circumstances there can be no doubt of the correctness of said finding, that the realty company at the time it accepted the assignment "had notice, actual and constructive, of the said mortgage of August 5, 1924. . . . "

On February 16, 1925, before the option contained in the lease had expired, DeWitt-Blair Realty Company exercised the option, and secured from the lessor chemical company a conveyance of the fee. This conveyance was properly recorded April 17, 1925. On February 17, 1925, the realty company conveyed the property to L. M. Boughton, who in turn, on February 26, 1925, conveyed the property to John T. Martin. The trial court found that neither Boughton nor Martin paid anything of value for the property, and that both had "actual and constructive notice of the said

mortgage of August 5, 1924, and of the fact that said mortgage was a lien upon the indenture of lease of May 1, 1922, and upon the option to purchase contained therein''.

Based on these facts the trial court held that the mortgage of August 5, 1924, constituted a lien on both the lease and option; that when the DeWitt-Blair Realty Company with full knowledge of all the facts exercised the option and secured a conveyance of the fee, the mortgage became a lien on the fee title prior to any claim of the realty company; that Boughton and Martin secured no greater rights than were held by the realty company. It is the correctness of the conclusion that the mortgage constitutes a lien on the fee that is challenged on this appeal.

Stripped of all unnecessary facts, the problem involved can be simply stated as follows: An owner of a lease containing an option to purchase the fee, mortgages the same to secure a debt. Thereafter the lessee-mortgagor assigns the lease to a third party who has full knowledge of the mortgage. The third party exercises the option and secures a conveyance of the fee. The ultimate legal question to be determined is whether or not under such circumstances the lien of the mortgage attaches to the fee in the hands of the third party or those who take with notice, from the third party.

Before this question can properly be determined it is necessary to determine several preliminary problems, viz.: First did the mortgage cover the option as well as the lease? Second, was the option a mortgagable interest? Both of these questions must be answered in the affirmative.

We have no doubt of the correctness of the trial court's conclusion that the mortgage did in fact include and was intended to include the option as well as the leasehold interest. The language above quoted from the mortgage, both in the clause specifically describing the lease and in the general covering clause, can leave but little doubt that the parties intended the option when the lease was mortgaged. Even if this were not the fact the same result would follow from the proper application of section 2926 of the Civil Code. That section provides that ''a mortgage is a lien upon everything that would pass by a grant of the property''. In *Blakeman* v. *Miller*, 136 Cal. 138 [89 Am. St. Rep. 120, 68 Pac. 587], a lessee assigned a lease containing

an option to purchase without specifically mentioning the option. The court held that the assignment of the lease carried with it the option to purchase. It therefore follows that since the option would pass by a grant or assignment of the lease, by virtue of the provisions of section 2926 of the Civil Code, *supra*, the option became subject to the lien of the mortgage.

Considerable portions of the briefs of counsel are devoted to a discussion of the question as to whether or not an option is an "interest in land". There are apparently two lines of authority on this subject, one holding that before its exercise the owner of an option based on a consideration has an equitable interest in the land, the other line of cases holding that the owner of such an option before its exercise has no interest, equitable or otherwise, in the land. The existence of these two lines of authority was recognized by this court in the case of *Smith* v. *Bangham,* 156 Cal. 359, at page 365 [28 L. R. A. (N. S.) 522, 104 Pac. 689]. ▮ We do not find it necessary to decide in this case whether or not an option to purchase real property unconnected with an interest in property such as a lease would give the holder thereof an interest in the land which could be mortgaged, for the reason that we are of the opinion that when an option to purchase is contained in a lease of the property, such option covenant is a real covenant running with the land. Since this is so, the option covenant, as all other real covenants contained in the lease, would pass by a grant of the lease, and therefore under section 2926 of the Civil Code, *supra,* such a covenant becomes subject to the lien of the mortgage. That an option covenant contained in a lease is a real covenant running with the land is well settled in this state. In the early case of *Laffan* v. *Naglee,* 9 Cal. 662 [70 Am. Dec. 678], the lessees assigned their interest in a lease. The court stated that "the first and most important question arising in this case is whether, by the legal effect of the assignment, the right to purchase the fee of Smith and wife passed to Laffan and Naglee?" On page 678 the court answered this question as follows: "As the covenant in reference to this preemptive right of purchase constituted an essential part of the lease itself, and, therefore, ran with the land, the several assignments . . . were ample to carry to the assignees, respectively, this right." (See, also, *Hall* v. *Center,* 40 Cal.

63, and *Blakeman* v. *Miller, supra.*) These cases establish the proposition that an option in a lease is a covenant running with land, passing to an assignee of the lease, and enforceable in equity against the lessor or his assigns. In *Standard Oil Co.* v. *Slye,* 164 Cal. 435 [129 Pac. 589], the court held that a covenant to renew contained in a lease was a covenant running with the land. Such a covenant is not legally distinguishable in nature from a covenant to convey the entire fee. In that case, as in the instant case, the covenant was not made expressly binding on heirs and assigns, but that fact did not prevent this court from holding that the covenant ran.

Appellants seek to distinguish these cases on the ground that although ordinarily an option to purchase constitutes a real covenant running with the land, it cannot be so classified in the instant case because here the lease contained a stipulation against assignment without the consent of the lessor. It is contended that the mortgage of the lease which apparently was made without the consent of the lessor, violated this provision, and that the effect of such a provision is to make the covenant a personal one. We do not believe that either of these conclusions is correct. In the first place we do not believe that a covenant against assignment contained in a lease is violated by the giving of a mortgage on the lease. It hardly needs citation of authority to the principle that covenants limiting the free alienation of property such as covenants against assignment are barely tolerated and must be strictly construed. Thus it has been held that a covenant against assignment is not violated by an assignment from one cotenant to another. (*Randol* v. *Scott,* 110 Cal. 590 [42 Pac. 976].) Likewise a covenant against assignment is not violated by a subletting. (*Cross* v. *Bouck,* 175 Cal. 253 [165 Pac. 702]; *Stevinson* v. *Joy,* 164 Cal. 279 [128 Pac. 751].) These cases and many others that might be cited establish the rule that it is only a technical assignment that is prohibited by such a covenant. A mortgage of the lease, of course, does not constitute a technical assignment thereof. In this state a mortgage does not operate to transfer the title to the mortgaged property, it simply creates a lien thereon. The decisions in other states where the lien theory of mortgages prevails, clearly hold that a covenant against assignment is not violated by the giving

of a mortgage. (*Riggs* v. *Pursell,* 66 N. Y. 193; *Crouse* v. *Michell,* 130 Mich. 347 [97 Am. St. Rep. 479, 90 N. W. 32]; *Dunlop* v. *Mulry,* 85 App. Div. 498 [83 N. Y. Supp. 477, 1104]; *Badger Lumber Co.* v. *Parker,* 85 Kan. 134 [35 L. R. A. (N. S.) 901, 116 Pac. 242].)

Moreover, even if the mortgage did violate the covenant against assignment, we do not see how that fact could operate so as to make the option covenant a personal one. ■ The assignment of a lease in violation of a covenant against assignment without the consent of the lessor is nevertheless a binding assignment which passes the leasehold estate, and with which runs all covenants touching the land. Such an assignment in violation of the covenant is, however, subject to the option in the lessor to forfeit the lease. The only remedy for the breach of such a covenant would be the exercise by the lessor of his option to forfeit the lease. (*Buchanan* v. *Banta,* 204 Cal. 73 [266 Pac. 547]; *Garcia* v. *Gunn,* 119 Cal. 315 [51 Pac. 684]; *Randol* v. *Tatum,* 98 Cal. 390 [33 Pac. 433]; *Baker* v. *Maier & Zobelein Brewery,* 140 Cal. 530 [74 Pac. 22]. See, also, *Sexton* v. *Chicago Storage Co.,* 129 Ill. 318 [16 Am. St. Rep. 274, 21 N. E. 920, 923].) It would only serve to unduly extend this opinion to further discuss this phase of the case. From the foregoing discussion we take it that the following two propositions have been fully established.

1. That the mortgage of the lease included the option and constituted a lien thereon. This result follows either because the option was specifically or impliedly included within the mortgage, or because the covenant of option ran with the leasehold interest.

2. That the option covenant, inasmuch as it does not involve personal trust, confidence or credit, is a real covenant running with the reversionary interest, and any lien thereon binds the grantees and assigns of the lessor who took with notice of the mortgage.

■ Now we turn to a discussion of the final and most important question involved, and that is whether or not the lien of the mortgage on the option, attached to the fee when the DeWitt-Blair Realty Company acquired the fee by exercising the mortgaged option, and had actual as well as constructive knowledge of the mortgage held by plaintiffs. It must be remembered that although the De-

Witt-Blair Realty Company was not one of the original mortgagees it became a mortgagee shortly after the execution of the mortgage by virtue of the fact that on August 9, 1924, H. H. Merrick, one of the mortgagees, assigned all of his right, title and interest in the mortgage to that company. Later that company also became the owner by assignment of the mortgaged lease and option. When the DeWitt-Blair Realty Company exercised the option and secured the fee it had actual as well as constructive knowledge of the existence of the mortgage lien on the option. Under such circumstances we can see no escape from the conclusion that both from the standpoint of law and equity the lien of the mortgage attaches to the fee. No case directly in point seems to have been decided in this state, but we are not without analogies in this state and cases from other jurisdictions. It has twice been held by this court that the lien of a mortgage on a contract to purchase real property attaches to the fee acquired by the completion of the contract of purchase by an assignee of the mortgagor with notice of the mortgage. (*Benedict* v. *Peppers,* 58 Cal. 618; *Tripler* v. *Mac-Donald Lumber Co.,* 173 Cal. 144 [159 Pac. 591].) In both of these cases a mortgage was executed on premises when the mortgagor held simply a purchase contract. Thereafter the purchase contract was assigned by the mortgagor to those who took with notice of the mortgage. Such assignees completed the contract and secured the fee. In each instance the lien of the mortgage was held to attach to the fee in the hands of such purchasers. Appellants contend that these cases are not authority on the point under discussion for the reason that a vendee under a contract to purchase has an "interest in land", while an optionee has not. The phrase "interest in land" is meaningless unless the total of the rights included therein is defined. It is true that a contract to purchase land is bilateral in the sense that it may be enforced by either party, while an option contract is enforceable only by the holder thereof, and the option holder cannot be compelled to buy. But in both cases the owner of the land has parted with one of the rights incidental to ownership—the right to convey the property to any but the vendee or the optionee. Whether this constitutes bestowing on the optionee an "interest" in the land we deem to be immaterial. We are of the opinion that the two situations

are sufficiently analogous so that the above two cases are some authority for the proposition that when the assignee of a mortgaged option contained in a lease, with knowledge of the mortgage, exercises the option and secures the fee, the lien of the mortgage attaches to the fee.

In cases from other jurisdictions it has been held that a lien on an option or pre-emptive right attaches to the fee title acquired by the exercise of the mortgaged right, whether such mortgaged right is exercised by the mortgagor or by his assignee with notice. In *Boon* v. *Kent*, 42 N. J. Eq. 131 [7 Atl. 344], one Thompson owned certain riparian lands. These lands carried with them a statutory option or pre-emptive right to require a lease or conveyance by the state of certain adjoining submerged lands. Thompson conveyed the riparian lands to Subers. Subers gave Thompson a mortgage on the riparian lands, which was recorded. Subers then conveyed the riparian lands to D. Kent, who thereupon exercised the option or pre-emptive right, and secured the fee to the submerged lands from the state. D. Kent then conveyed the riparian and submerged lands to E. S. Kent. Boon by various assignments became the holder of the note and mortgage. Boon sought to foreclose the mortgage and to impose the lien thereof on both the riparian and submerged lands. E. S. Kent contended "that the lands conveyed by the grant from the state should not be included in, but should be excluded from, the sale of the mortgaged premises under any decree of foreclosure and sale which may be made in this suit; and that the title thereto did not pass by the deed from Thompson to Subers, but was in the state; and he insists that the complainants ought not in equity to have the benefit of the subsequent purchase of the state's title by Daniel H. Kent." The court held, however, that the mortgage was a lien on both the riparian land and on the option or pre-emptive right, and that upon an exercise of the pre-emptive right by an assignee with notice of the mortgage, the lien of the mortgage attached to the fee.

In *Mackenzie* v. *Building & Loan Assn.*, 28 Canada Supreme Court Rep. 407, Austin and Arthurs leased certain lands to Thompson for a period of twenty-one years with an option to purchase any time within the first ten years. Thompson mortgaged the lease to the Building & Loan Association. Thereafter, by mesne assignments, the lease

was transferred to Mackenzie, subject to the mortgage. Mackenzie exercised the option and secured the fee from one Britton who had acquired the interest of the lessors. Under the law of Ontario, where the land was located, the fee owner can collect rents from either the lessee or the mortgagee of the lease. Mackenzie sought by this action to collect rents from the Building & Loan Association on the theory that it was only a mortgagee of the term. The mortgagee contended that the lien on the lease and option attached to and became a lien on the fee when the option was exercised by one with notice of the mortgage. The court affirmed the contention of the mortgagee Building & Loan Association, and held that the mortgage lien on the lease and option became a lien on the fee, prior to any claim of Mackenzie, when the option was exercised by one with notice of the mortgage.

In *Harsh* v. *Sutton*, 180 Ill. App. 651, one McDavid, the owner of certain real property, gave to the Glovers an option to buy the property. This option, based upon a consideration, is referred to by the court as a "bond". The Glovers assigned the bond or option to A. W. and Joseph Sutton, who gave back a note and mortgage. This mortgage was recorded. A. W. and Joseph Sutton then assigned the bond or option to Frank Sutton. Frank Sutton exercised the option and secured the fee. Frank then conveyed the fee to Martin and Fleming. In the meantime the mortgage and note had been transferred to Harsh. Harsh sought to foreclose his mortgage on the theory that although when it was given it amounted to no more than a lien on the bond or option, it became a lien on the fee when the option was exercised. At page 656 the court said:

"Upon the contention that A. W. Sutton and Joseph Sutton had no title at the time they executed the mortgage in question, Frank Glover, who was the original owner of this bond assigned the bond prior to the date of this mortgage to A. W. Sutton and Joseph Sutton, they thereby became the equitable owners of these premises subject to the payment of the amount due McDavid for the balance of the purchase money due him, and the mortgage which they gave at that time became a lien and attached to their equitable interest, whatever it may have been, and if thereafter they had obtained the title from McDavid by the payment of the

amount due McDavid and obtained a deed therefor, their mortgage contained [containing] the words mortgage and warrant would have attached to and become a lien on the title which they then acquired, and Frank Sutton who obtained the bond by assignment from them after this mortgage was placed upon record could obtain no greater rights in the premises than they had at the time it was assigned to him. And by completing the payment of the amount due on the McDavid bond he obtained his title through the specific performance proceeding from McDavid, subject to the mortgage executed by A. W. Sutton and Joseph Sutton; and the contention that A. W. Sutton and Joseph Sutton had no interest in the premises which could be made subject to a mortgage at the time they executed this note and mortgage is not tenable. . . . To permit the assignee of the original bond to secure these premises with this lien of record thereon merely by paying the amount due on the original bond would be inequitable and unjust. The record discloses that the present owners of the premises purchased the same with this mortgage on record and they were required to take notice thereof, and cannot be heard to say that they did not know this mortgage was not paid; the title they took was subject to it; it was their duty to ascertain the rights of the parties therein.''

In *Bank of Louisville* v. *Baumeister,* 87 Ky. 6 [7 S. W. 170], Mrs. Bullitt, the owner of land, executed to Spalding a lease with option to purchase. Spalding mortgaged the lease and option to one Olds. Spalding thereupon exercised the option, paying part of the purchase price in cash and gave back a purchase-money mortgage to Mrs. Bullitt to secure the balance. After acquiring the fee subject to the purchase-money mortgage, Spalding mortgaged his interest to the Bank of Louisville, and later gave another mortgage to Baumeister. On foreclosure all parties being joined, the court decreed the priority of the various liens as follows:

(1) The purchase-money mortgage of Mrs. Bullitt. All parties apparently conceded that this lien was entitled to priority over all the other liens; (2) The lien of Olds on the lease and option became a lien on the fee when the option was exercised; (3) The lien of the Bank of Louisville was declared subject to the lien of Olds; (4) The lien of Baumeister was declared subject to the other three liens. On

appeal the Bank of Louisville contended that Olds had no lien on the fee, for the reason that all he had was a lien on an option. The court held, however, that the lien of Olds on the lease and option became a lien on the fee when the fee was acquired by the exercise of the option by one with knowledge of the mortgage.

In *Yellow Chief Coal Co.* v. *Preston*, 166 Ky. 669 [179 ·S. W. 602], the court held that when the holder of an option which he knows to have been mortgaged, exercises it, the lien of the mortgage on the option attaches to the fee. After first stating the rule that a mortgage on land to be acquired in the future is ordinarily void against *bona .fide* purchasers, the court stated (p. 602) : ''But the rule has no application here; for the corporation did have such an estate in the land as could be conveyed by mortgage. It was the owner by an assignment of the option contracts, and, as expressly held in the case of *Bank of Louisville* v. *Baumeister, supra,* a contract for an option to purchase real estate at an agreed price within a specified time may be sold, assigned or mortgaged. Section 2341, Kentucky Statutes. When the contract was completed, and the legal title taken, it inured to the benefit of the mortgagees, who are the bondholders in this case.'' (See, also, *Shooters Island Shipyard Co* v. *Standard Shipbuilding Corp.*, 293 Fed. 706; *Owens* v. *Hughes*, 188 Wis. 215 [205 N. W. 812] ; *Point Breeze Ferry & Imp. Co.* v. *Bragaw*, 47 N. J. Eq. 298 [20 Atl. 967].)

From the reasoning in the above cases it clearly follows that the trial court herein correctly held that the mortgage constituted a lien on the option, and that when the option was exercised by the DeWitt-Blair Realty Company, with actual and constructive knowledge of the mortgage, the interest acquired by the Realty Company by the exercise of the option became subject to the lien of the mortgage. The transferees of the Realty Company likewise having actual and constructive knowledge of the mortgage, of course, stand in no better position than the Realty Company.

The appellants with some confidence rely on the case of *Ludy* v. *Zumwalt*, 85 Cal. App. 119 [259 Pac. 52], as establishing a contrary rule in this state. In that case Zumwalt owned a bare option to purchase certain real property. This option was unconnected with any other interest in the property. While the option was still alive, but before it was ex-

ercised Zumwalt entered into a contract with a canal company to supply the land with water. This contract created a lien on the interest of Zumwalt and was recorded. Zumwalt later exercised the option, acquired the fee, and gave back a purchase-money mortgage to the optioner. Having defaulted on the purchase-money mortgage, the holders thereof sought to foreclose. The canal company contended its lien was prior to that of the purchase-money mortgage. The court found that the purchase-money mortgagee had no actual notice of the contract lien, and held that a bare option was not such an interest in land so that a recorded lien thereon would give constructive notice thereof. Consequently the court properly held that the purchase-money mortgage had priority. On rehearing the appellate court stated, at page 133: ''If the Zumwalts at the time of executing the contract with the appellant, were connected in any way with the record title to the property, then the position of appellant here would be impregnable; but, as stated, it is clear to our minds that at the time mentioned the Zumwalts had no more connection with the title to the property than any other person having no transaction with the owner of the land regarding said property.'' This quotation clearly indicates the distinction between the Zumwalt case and the instant case. In the instant case the foregoing discussion has clearly indicated that the respondents were connected with the record title. In the instant case no question of constructive notice is involved. Here the Realty Company had actual as well as constructive notice of the mortgage. In the Zumwalt case the controversy was between the *optioner* who held a *purchase-money mortgage* and the lienholder. In the instant case the controversy is between the *optionee* and the lienholder. The entire basis of the Zumwalt case was that when Zumwalt executed the contract with the canal company he had no title to the property. By his contract he attempted to create a lien on property which he did not own. This could not serve as *constructive* notice to the real *owners* of the property. The case did not hold that the lien of the canal company did not attach to Zumwalt's interest—it merely held that the purchase-money mortgage had priority. For the above reasons the Zumwalt case is not authority on the question here involved. Whatever was said in that case as to the nature of an option unconnected with a lease

or other interest in land can have no application to a case where the option is so connected.

For the foregoing reasons the judgment appealed from is affirmed.

Rehearing denied.