[Civ. No. 1845.    Second Appellate District.—June 12, 1917.]

JOHN WOLLENSHLAGER, Appellant, v. JAMES MacLEAN et al., Respondents.

VENDOR AND PURCHASER—SALE OF LEASED APARTMENT HOUSE—RECOVERY OF RENT—CONSTRUCTIVE NOTICE OF RELATIONS OF PARTIES INTERESTED.—Where the lessor and lessees of an apartment house enter into an agreement with a third party for furnishing the house and the installing of a manager to operate it, and therein provide that they shall receive no rent for the premises during the continuation of the agreement, but that the net profits of the business shall be divided equally between them, and the loss, if any, borne equally, and that nothing therein shall be construed to be a partnership, and thereafter on the same day the lessor and lessees enter into an agreement providing that the other agreement shall in no way affect the lease, that if any loss resulted it shall be borne equally, and that any profits shall be divided in the same manner, a purchaser of the apartment house, without actual knowledge of the second agreement, is put upon inquiry as to the relations between the lessor and lessees, and is charged with knowledge that the right to collect the rent has ceased and that the partnership relation has been substituted therefor, by his knowledge of the first agreement and of the third party's possession thereunder.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. W. H. Thomas, Judge presiding.

The facts are stated in the opinion of the court.

William H. Fuller, for Appellant.

G. C. De Garmo, N. P. Moerdyke, and H. J. Angell, for Respondents.

CONREY, P. J.—Plaintiff appeals from the judgment and from an order denying his motion for a new trial. He prosecuted this action to recover an alleged unpaid balance of rent for the months of November and December, 1913, and January, 1914, under a ten-year lease of an apartment house in the city of Los Angeles. The lease was executed on May 14, 1913, to the defendants by Elias A. Shedoudy, who, on the sixteenth day of October, 1913, conveyed the premises

to the plaintiff and executed to him a transfer of the lease. The lease provided for a rental of $532 per month, payable monthly in advance.

On May 16, 1913, Shedoudy and the defendants, as parties of the first part, made an agreement in writing with one Colyear by which Colyear was authorized to furnish the apartment house, at a cost which should not exceed ten thousand dollars without the written consent of the first parties. It was agreed that Colyear should install a competent person in the building as manager for the purpose of running and operating the apartment house "until the said property or apartment house can be leased and the furniture and furnishings placed in said buildings by the party of the second part is sold upon terms and conditions satisfactory to both parties hereto." It was also agreed that the first parties should receive no rent for the premises during the continuation of that agreement; that the net receipts from the rentals from the rooms in the building should be divided equally between the parties thereto during the life of the agreement; that one-half of the net profits of the business, after paying the running expenses thereof, should be paid to the first parties by way of compensation for the use and rent of the building, and the other half should belong to Colyear; that if the moneys so received from the rent of the rooms should be insufficient to pay the operating expenses thereof, the loss would be borne equally between the parties of the first part and the party of the second part. It was agreed that either party should have the right to endeavor to secure a tenant to purchase the furniture and furnishings and to lease the building; the tenant and terms of the lease must be satisfactory to the first parties and the price and terms of sale of the furniture and furnishings must be satisfactory to the second party. If the price obtained from the purchaser should prove to be greater than the invoice price of the furniture and furnishings, the surplus above the invoice price would be equally divided between the parties to this agreement. The agreement further provided: "Nothing contained in this agreement shall be construed to constitute a partnership between the parties hereto, it being the express intention of said parties to make a contract for the sale of said furniture and furnishings satisfactory to said second party and the execution of a lease of said real properties above described

satisfactory to said first parties. Neither parties hereto shall have the right to assign this contract except by written consent of the other parties hereto." On the same day when the Colyear contract was executed, an agreement (designated in the briefs as "second agreement"), was executed in writing between Shedoudy and the defendants, referring to the lease and to the Colyear agreement and agreeing between Shedoudy and the defendants as follows: "It is understood and agreed that the execution of this agreement shall in no way affect the lease executed between Elias A. Shedoudy, as owner, and George W. May, H. G. Grimwood and James MacLean, as lessees, and shall not be construed as to interfere with said lease. It is further agreed that if a loss is result under this agreement, that one-half of said loss shall be paid by Elias A. Shedoudy and James MacLean, and one-half shall be paid by George W. May and H. G. Grimwood. In case of profit under this agreement, the said profit shall be divided in the same manner."

On or about the seventeenth day of December, 1913, Colyear sold and transferred to the plaintiff Wollenshlager all of his interest in the furniture and under the Colyear agreement. A settlement was made between Colyear and Wollenshlager of the profits of the current business down to December 15th, and payment made to Wollenshlager as provided in the Colyear agreement. Thereupon, under the instructions of Colyear and of Wollenshlager, the manager of the house ceased to account to Colyear and continued to conduct business under the orders of Wollenshlager. These transactions occurred without the consent of the defendants and without notice to them. In prosecuting this action for rent the plaintiff gives credit to the defendants for the moneys received by him from Colyear and from the house manager for the months of November and December, amounting in all to $500.94, and seeks to obtain judgment for the remaining balance of $1,095.06.

The court found that the lease and the Colyear agreement were executed as above stated; that Colyear under his agreement took possession of the premises and furnished the same and conducted the business in accordance with the agreement until December 17, 1913; "that defendants herein have never at any time had, or been in possession of, the premises above described, or any part thereof"; that the premises and lease

were transferred by Shedoudy to the plaintiff in October, 1913, with actual notice to plaintiff of the Colyear agreement; that on December 17, 1913, the plaintiff purchased and Colyear transferred to the plaintiff, without the consent or knowledge of the defendants, all of Colyear's right, title, and interest in and to said agreement and the property therein described; that on December 17, 1913, the plaintiff, without the consent of the defendants or any of them, took exclusive possession of the premises, and from that time forth held and managed said apartment house and, without the consent of the defendants, collected and appropriated to his own use the rents and profits thereof; that none of the rentals claimed by the plaintiff in this action were due or owing from the defendants to the plaintiff. Judgment was entered accordingly.

Appellant claims that the evidence is not sufficient to support certain of the findings. In this we do not agree with him. There is the uncontradicted testimony of Colyear that he sold and transferred to the plaintiff the furniture and furnishings of the apartment house and all of his right, title, and interest in and to the Colyear agreement. Under the circumstances shown, the plaintiff should not be permitted to take advantage of the provision in that agreement that it must not be assigned wihout the written consent of all the parties thereto. He consented to the transfer and pursuant thereto took the property into his possession. The court's finding that the plaintiff, without the consent of the defendants, took exclusive possession of the property and collected and appropriated to his own use the rents and profits thereof is entirely in accordance with the evidence, and it is difficult to account for the assertion of counsel for the appellant that "there is not a scintilla of evidence to be found in the record to support this finding."

Appellant places emphasis upon that term of the Colyear contract which provided that it should not be construed to in any way affect or interfere with the lease executed between Shedoudy and the defendants. A statement of that kind in a contract is not controlling if the terms of the contract are such that it cannot be carried into effect without violating the terms of the prior contract. The lease of May 14th provided that the defendants should have possession of the apartment house. The Colyear agreement of May 16th gave

that possession to Colyear. The lease provided that the defendants should pay rent to Shedoudy. The Colyear contract provided not only for a division of profits, but it also provided for an equal sharing of losses (if any there should be), as between Colyear on the one side and Shedoudy and the defendants on the other side. Then to make clear the effect of these transactions as between Shedoudy and the defendants, those parties entered into the "second agreement," which contained a new alignment of the parties, classing MacLean with Shedoudy as bound to pay one-half the loss "if a loss is result under this agreement," and obligating May and Grimwood to pay the other half; the profits, if any, to be divided in the same manner. It is true that the evidence shown in the record is silent as to whether or not the plaintiff had actual knowledge of the "second agreement" when he accepted his transfer of the premises and of the lease as sold to him by Shedoudy; but his knowledge of the Colyear agreement and of Colyear's possession of the premises under that agreement was, in our opinion, sufficient to put him upon inquiry as to what were the actually existing relations between Shedoudy and the defendants. Reasonable inquiry would have apprised him of the fact that Shedoudy's right to collect rent under the lease had ceased to exist and that the partnership relation had been substituted therefor. We are satisfied that this change had occurred as the legal result of their transactions. In principle the case is like that of *Pico* v. *Cuyas,* 47 Cal. 174. Pico made to Cuyas a written lease of a hotel. Thereafter, and before the lessee obtained possession, the parties entered into a partnership to conduct together the business of the hotel upon an agreed division of profits and losses, it being understood that the lessee was to manage the business. Upon these facts it was determined that Pico could not recover rent. The court said: "Nor do we think that the effect of the contract proven was to change or modify the terms of the lease, or to work a surrender of it. The two contracts are entirely separate and distinct. It was competent for the plaintiff, after the execution of the lease, to enter into a contract of partnership with the defendant in the business of hotel-keeping, and to agree that the rent of the hotel should be a charge upon the firm. He remained the lessor and his claim for rent continued, but by an independent contract, which was entirely disconnected from the lease, he obligated

himself to sustain as a partner his proportion of the charge for rent, as of other charges against the firm. It is the result of this contract, that so long as the partnership continues, he can receive the rent only from the net profits of the concern; and these cannot be ascertained otherwise than by a partnership accounting.'' So here, even if the Colyear contract did not have the effect to destroy the lease, it was sufficient to excuse the lessees from payment of rent and to limit the lessor's right by the amount of his share of the net profits so long as the Colyear contract continued in force. It did continue in force until December 17, 1913. This is sufficient to exclude the plaintiff's demand for rent for the month of November and the first sixteen days of December; and, leaving the Colyear contract out of the case, the plaintiff's right to recover for the remainder of December and for the following month of January is defeated because his act in taking possession of the premises on December 17th without the consent of the defendants was an eviction of the defendants from any possession which they may be supposed to have had under the lease.

The judgment and order are affirmed.

James, J., and Works, J., *pro tem.,* concurred.