[Civ. No. 1905.   Third Appellate District.—March 28, 1919.]

CHAS. B. BLESSING, etc., Respondent, v. EMMA FETTERS et al., Appellants.

**[1]** LANDLORD AND TENANT — EVICTION — TERMINATION OF LEASE — RECOVERY OF DEPOSIT.—In this action brought by a successor in interest of a tenant to recover from the landlord moneys deposited as security for the performance of the covenants of the lease, upon the claim that there had been an eviction of the tenant by the landlord and a consequent termination of the lease, there was sufficient

evidence to justify the finding of the trial court that there was a termination of the lease by eviction, and consequently the landlord was not entitled to retain the deposit.

[2] Id.—Constructive Eviction.—Any intentional and injurious interference by the landlord which deprives the tenant of the means or the power of beneficial enjoyment of the demised premises or any part thereof, or materially impairs such beneficial enjoyment, is a constructive eviction.

[3] Id.—Retention of Deposit.—A landlord is not entitled to retain a deposit given to secure certain covenants after the termination of the lease by eviction.

[4] Id.—Assignment of Lease—Breach of Covenant—Forfeiture.— Although an assignment of a half interest in a lease to a person with whom a partnership had been formed and its subsequent use by the partnership was without the written consent of the landlord and in violation of a covenant in the lease, it did not create a forfeiture of the lease, especially after the landlord accepted the rent with knowledge of the assignment.

[5] Id.—Bankruptcy of Partner—Right to Possession.—Even after such assignee filed his petition in bankruptcy, the original lessee was entitled to hold possession and to have someone on the premises on his behalf, not only under his right as original lessee but also as the remaining solvent partner, until he consented to have the partnership property administered in bankruptcy.

[6] Parties — Action Against Wife — Joinder of Husband — Judgment.—In an action against a married woman in which her husband is joined as a party defendant merely because he is such husband, no judgment should be entered against him.

APPEAL from a judgment of the Superior Court of Sonoma County. Thos. C. Denny, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

W. F. Cowan for Appellants.

Reuben G. Hunt and Samuel M. Samter for Respondent.

BUCK, P. J., *pro tem.*—This is an action brought by a successor in interest of a tenant to recover from the landlord moneys deposited as security for the performance of the covenants of the lease, upon the claim that there had been an eviction of the tenant by the landlord and a consequent termination of the lease. With the foregoing cause of action there is

joined a cause of action to recover the sum of $250 deposited by the tenant with the landlord at the time of the making of the lease, with the understanding that this sum should be returned by the landlord to the tenant at the termination of the lease upon the renewal of a certain liquor license in favor of the landlord.

The case was tried without a jury, and the court found that there was an eviction and that plaintiff was entitled to recover the $250 deposited to cover the saloon license, and also was entitled to recover the sum of one thousand dollars deposited as security for the performance of the covenants of the lease, less the sum of $350, being the damage caused by breach of covenant to take proper care of the premises and goods leased. Judgment accordingly in the sum of nine hundred dollars was given against defendants Emma Fetters and her husband George Fetters, from which they each took this appeal.

In appellants' brief no points are made or suggested in regard to the findings or evidence in the cause of action in regard to the $250 deposited on account of the liquor license.

In their brief "appellants claim in this action that the sole question for decision is did the lessor either actually or constructively evict the tenant Nichols?" On this issue the finding of the court was as follows:

"On or about the thirteenth day of September, 1917, the defendant Emma Fetters, while the said lease was still in full force and effect, wrongfully re-entered upon the said hotel premises and evicted all persons therefrom and assumed possession thereof, all without the consent and against the will of said partnership, said Nichols, and said bankrupt, and thereby terminated said lease and released the said Nichols from his obligation to pay rent under said lease. Ever since such re-entry the defendant Emma Fetters has been and now is in full possession of the said premises to the exclusion of said Nichols, the said bankrupt, the said partnership, and the plaintiff as such receiver and trustee. Ever since on or about the fourth day of October, 1917, the defendants have been operating the said hotel premises for their own use and benefit, to the exclusion of said Nichols, the said bankrupt, the said partnership, and the plaintiff as such receiver and trustee."

This finding is in strict accord with the issues made by the pleadings, and no issue is raised by the pleadings in regard

to the termination of the lease in any other manner than by the eviction above found.

On most points the evidence is sharply·in conflict, and in some respects the inferences which may be drawn from the evidence are equally conflicting. But it substantially appears from the evidence that the lease in question was executed on the second day of January, 1917, for the term of five years, at the annual rental of $960, payable quarterly in advance, and was for the property known as the "Hotel Chauvet," consisting of the hotel building and hotel equipments and furniture therein contained, and of the estimated value of one thousand dollars. The lease contained the usual covenants for the payment of rent, and that the tenant should not "voluntarily or involuntarily assign this lease without the written consent" of the landlord, and provided that the tenant should conduct the hotel business in a quiet, lawful, and orderly manner, and should properly care for the premises and keep the buildings in good condition of repair at his own cost and expense, and "upon the expiration of this lease or any sooner determination thereof, the tenant will quit and surrender the premises and all of said personal property in as good state and condition as reasonable use and wear thereof will permit." And the lease further recited that the tenant, upon the execution of the lease, has deposited with the landlord "the sum of one thousand ($1000.00) dollars as a guaranty that he will faithfully perform·each and every of the covenants of this lease, and said sum of one thousand ($1000.00) dollars is to be kept and retained by the said party of the first part (the landlord) during the term of this lease as a guaranty for the faithful performance thereof, and any damage or detriment that said party of the first part may sustain by reason of any violation of any of the covenants of this lease shall be indemnified and paid from said sum of one thousand ($1000.00) dollars."

On May 15th, following the execution of the lease, the tenant Nichols entered into an agreement of partnership with one Oscar Banks for the purpose of conducting the hotel and saloon business in the leased premises. For a one-half interest in the business Banks paid to Nichols the sum of eight hundred dollars and received from Nichols an assignment of a one-half interest in the lease and moneys deposited under the terms of the lease. The defendant had knowledge of this transaction and of the association of Banks in the business,

but never gave any written consent to the assignment, though there is testimony to the effect that she promised so to do. On July 1, 1918, the rent, payable quarterly in advance to October 2, 1918, was paid by Nichols and accepted by the landlord. Later in July some controversy arose between the parties and the landlord, Emma Fetters, who claimed that the hotel business was not being conducted in a proper and lawful manner, and after offering Banks $250 for his interest she stated, "If you don't want to sell sooner or later you have to go out, and if you don't go out I will show you that I have to put you out." About two weeks after this Nichols went away on a trip, leaving his partner Banks "in charge of the place." But he returned in about two weeks after some attachments had been levied upon the place. After these attachments were paid off by himself and Banks, he went away again, leaving Banks in charge, and saying that "he wanted to go on a trip." Shortly after other attachments were levied and Mrs. Fetters appeared at the place and told Banks "that if Mr. Nichols wasn't there she would have to take over the place and if I would not go out she would put me out, and that I had no business over there and I should not stay; that I would spoil her business, her whole investment." To which Banks replied, "I am in charge of this place, and I take very well care for it." Whereupon Banks "sent a telegram to Mr. Nichols that the Chauvet hotel, the saloon was attached, and I ask him for his advice what to do. I waited a couple of days and finally a telegram came and said to do the best I could, so I went up to Santa Rosa and I left Mr. Billie Karns in charge of the place and I told him if anybody comes and wanted to go in that place don't let them in." Upon returning from Santa Rosa about September 11th, Banks was taken in custody by the constable upon a warrant of arrest sworn to by Mrs. Fetters and taken back to the hotel, where he found Mrs. Fetters in possession with the constable. She told him, among other things, "If you don't go out I will have to put you out, and if you don't go out I will put you in jail, you to stay there." After Mrs. Fetters had taken an inventory of the furniture in the place, Banks was told by her that he could now go. And Banks left, fearing, as he states, that if he did not go she would have him prosecuted and sent to the state's prison. And "Mrs. Fetters commanded the constable to lock everything in the house, let nobody in there, and she would

put somebody in or the constable would put somebody in, and Mr. Doon, what was there, I told him to take charge of the place, and she says, 'There will be nobody here in the place, that place belongs to me and I don't want to have nobody run my place.' So I went to take the bus to Napa and I never went back." Banks had already contemplated going into bankruptcy, and for that purpose had made an inventory of and segregated a part of the personal property belonging to him on the premises, and on September 13th Banks filed his petition in bankruptcy and on that day was adjudged a bankrupt. On September 28th the plaintiff herein was appointed receiver and on October 4th appointed trustee in bankruptcy. On September 20th Nichols filed in the bankruptcy court his written consent to the administration of the partnership affairs by the bankruptcy court. But prior to this and since the attachments were dissolved by the adjudication in bankruptcy Mrs. Fetters directed the attachment keeper of the property on the premises to "stay there and take care of the place; that she would have to keep a man there on account of the neighbors." Also at the time of the last attachment, on or about September 11th, Mrs. Fetters told one of the attaching creditors, who had just levied an attachment at her suggestion, "We will have to get them out, or I will have to get them out—. The remark was made at the time I put the attachment on there, struck me that Mrs. Fetters certainly wanted to get them out."

[1] From the foregoing it appears that there was sufficient evidence to justify the finding of the trial court that there was a termination of the lease by eviction before the appointment of the trustee in bankruptcy, and that consequently the defendant landlord was not entitled to retain the deposit given to secure the performance of the covenants of the lease after it had been thus wrongfully terminated by her. [2] As stated in the case of *New State Brewing Assn.* v. *Miller,* 43 Okl. 183, [141 Pac. 1175]: "Any intentional and injurious interference by the landlord which deprives the tenant of the means or the power of beneficial enjoyment of the demised premises or any part thereof, or materially impairs such beneficial enjoyment is a constructive eviction." And the case of *Onward Const. Co.* v. *Harris* (Sup.), 144 N. Y. Supp. 318, holds that threats and abusive language may in some instances be sufficient to constitute an eviction. [3]

And the following authorities are conclusive on the proposition that a landlord is not entitled to retain a deposit given to secure certain covenants after the termination of the lease by eviction: *Green* v. *Frahm*, 176 Cal. 259, [168 Pac. 114]; *Rehkopf* v. *Wirz*, 31 Cal. App. 695, [161 Pac. 285]; *Rez* v. *Summers*, 34 Cal. App. 527, [168 Pac. 156]; *Wollenshlager* v. *MacLean*, 34 Cal. App. 102, [166 Pac. 853]; Tiffany on Landlord and Tenant, pp. 1221, 1258; *Wilson* v. *Agnew*, 25 Colo. App. 109, [136 Pac. 96].

[4]   Though the assignment of the half interest in the lease to Banks and its use by the partnership was without the written consent of the landlord and in violation of the covenant in the lease, it did not create a forfeiture of the lease, especially after the landlord had accepted the rent with knowledge of the assignment.   (*Garcia* v. *Gunn*, 119 Cal. 315, 319, [51 Pac. 684].)

[5]   The evidence is sufficient to show that at the time of Banks' eviction Nichols had not abandoned the lease and that Banks was attempting to hold possession, not only for himself, but also to take care of the property for Nichols.   Furthermore, even after the bankruptcy proceedings on September 13th, Nichols was entitled to hold possession and to have someone on the premises on his behalf, not only under his right as original lessee but also as the remaining solvent partner until he consented to have the partnership property administered in bankruptcy.   (*Francis* v. *McNeal*, 228 U. S. 696, at page 700, [L. R. A. 1915E, 706, 57 L. Ed. 1029, 33 Sup. Ct. Rep. 701, see, also, Rose's U. S. Notes].)

[6]   Appellants insist that in any event the judgment against the husband, George Fetters, should be reversed.   And it is clear both from the evidence and the judgment-roll that no judgment should have been entered against him.   In the complaint it is stated that "Said George Fetters is joined as party defendant herein only because of the provisions of section 370 of the Code of Civil Procedure of the state of California."   And at the opening of the trial counsel stated: "The only reason George Fetters is joined as a defendant is because he is the husband of Emma Fetters."   But, notwithstanding this, the plaintiff took judgment that he "have and recover of and from the defendants Emma Fetters and George Fetters, her husband, the sum of nine hundred dollars, etc."   By its terms this judgment unjustly binds and affects not only

the separate property of George Fetters but also the community property.  But, as stated in the case of *Terry* v. *Superior Court*, 110 Cal., at page 88, [42 Pac. 465], husbands become "proper and necessary parties defendant, not, however, to the end that they or their property should be bound by the judgment, but solely that they might be able to aid their wives in their defense.  The present utility of the statute in this progressive day may be open to question, but, however this may be, it was done at a time when the lawmakers, perhaps with mistaken chivalry, believed that a wife brought into litigation might be the better for the comfort, protection, and support of her husband's authorized presence."  (See, also, *Van Maren* v. *Johnson*, 15 Cal. 308.)

Substantial justice, however, can be accomplished by a modification of the judgment.   (*Davis* v. *Lamb et al.*, 5 Cal. Unrep. 765, [35 Pac. 306].)

It is therefore ordered that the judgment as to the defendant Emma Fetters be affirmed, with direction to the trial court that the judgment be modified so as to provide that it do not affect the separate property of the defendant George Fetters or the community property (*Van Maren* v. *Johnson, supra*), and as so modified the judgment will be affirmed without costs to either appellant.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 26, 1919.

All the Justices concurred.