[Civ. No. 9233. First Appellate District, Division One.—July 23, 1935.]

HAROLD K. GRAHAM et al., Respondents, v. GEORGE W. WOOD et al., Defendants and Appellants; E. C. STREET, as Trustee, etc., Intervener and Appellant.

Boyd Oliver for Appellants.

Silverstein & Silverstein for Intervener and Appellant.

Raymond. Salisbury for Respondents.

THE COURT.—The plaintiffs Graham and Sampson, in behalf of themselves and as assignees of other claimants, namely, Sam Miller, George L. Courtney and Charles A. Sutter, brought this action against the defendants George W. Wood and Lewin A. Wood, individually and as copartners doing business under the firm name of Wood Bros., to recover certain sums of money aggregating $2,600 theretofore paid by said claimants to George W. Wood in connection with the execution of four subleases granting to claimants, as sublessees, the privilege of conducting certain concessions in

Hotel Oakland, for the number of years stated in said subleases. The action is based upon the claim that shortly after the subleases became operative they were terminated by the acts of the lessors and their successors in interest, without fault on the part of the sublessees. Following the alleged termination thereof, the sublessees demanded repayment of said sums of money, and the defendant George W. Wood, who negotiated the subleases and executed the same on behalf of the lessors, as an evidence of good faith and in conformity with an agreement made by him with the sublessees, deposited $2,600 in a bank in his name as trustee to await the termination of the action the sublessees contemplated bringing to recover said sums of money; and within a few days thereafter, to wit, on February 2, 1932, the complaint in the present action was filed and the money so deposited was attached. Issue being joined, the action was set for trial; and four days prior to the date of trial E. C. Street, as trustee in bankruptcy of Wood Brothers Holding Company, a corporation, claiming that the money so deposited by Wood constituted a trust fund which belonged to the bankrupt's estate, filed a complaint in intervention to recover the deposit. Plaintiffs answered the intervener's complaint, denying that the deposit constituted a trust fund or that the intervener was entitled to any part thereof; and in order to avoid delay in the trial of the action it was stipulated that the allegations of said complaint were deemed denied by the defendants Wood brothers, individually and as copartners. The trial court found that the sublessees were entitled to the return of the sums of money so paid by them to Wood; and as to the issues raised by the intervener's complaint, found that the money deposited in the bank by Wood did not constitute a trust fund, and that the intervener was entitled to no part thereof. Judgment was entered accordingly, that plaintiffs do have and recover of and from the defendants, individually and as copartners, the sum of $2,600, and "that intervener take nothing herein". From said judgment the defendants and the intervener have taken separate appeals. The bank was made a party defendant also, but admittedly it has no interest in the matter, nor is it mentioned in the judgment.

The master lease was held originally by Wood brothers, as copartners. It was executed August 11, 1931, at which time

the premises were encumbered by mortgage bonds, naming the Crocker First Federal Trust Company as trustee. The lease called for a twenty-five-year term, on a percentage basis rental, and permitted the lessees to incorporate and transfer the lease to the corporation. On August 18, 1931, such a corporation was organized pursuant to the laws of Nevada, under the name Wood Brothers Holding Company, and on the same day the copartners transferred the lease to the corporation. Lewin A. Wood, however, one of the partners, was not one of the incorporators of the holding company, nor did he hold any of its stock. The incorporators thereof were the defendant George W. Wood, D. E. Wood (another brother) and S. A. Wood (wife of George W. Wood) and they constituted the directorate and became the officers of the holding company, George W. Wood being elected president and general manager. The consideration for the transfer of the lease was the issuance by the holding company of 10,000 shares of common stock (the entire authorized issue) and 1,000 shares of preferred stock ($\frac{1}{4}$ of the entire authorized issue) which was divided among the three persons above named. In payment for his interest in the lease Lewin A. Wood received from S. A. Wood stock in another corporation (Wood Leasing Co. of San Diego) and in addition was employed by the holding company as manager of the hotel at a monthly salary of $300 and given suitable living apartments therein. Plaintiffs' sublease was executed prior to the incorporation of the holding company, and the others subsequent thereto; and all of the sublessees commenced operations thereunder immediately following the execution of their subleases, which were drawn on a percentage basis with a minimum rental, and ran from one to five years.

Early in 1932 difficulties arose between George W. Wood and the bondholders' committee, and in January, 1932, the committee's representative informed him, so he testified, that the lease under which the holding company purported to operate the hotel was canceled. Thereupon, and on January 12, 1932, the board of directors of the holding company adopted a resolution to the effect that by reason of such cancellation the holding company was operating the property without a lease, and that effort be made to negotiate a new lease, or, upon failure of the owners to grant the same, that

the hotel be closed; and on January 15, 1932, a second reso-
lution was adopted directing that the hotel be closed. Ac-
cordingly at midnight on January 18, 1932, the hotel was
closed by locking the doors thereof; and they remained locked
until 11 o'clock that morning, January 19, 1932, at which
time the hotel was reopened by Henry Barker, who took pos-
session as receiver, under appointment by the superior court,
in an action brought on behalf of the bondholders by the
Crocker First Federal Trust Company, as trustee. On Janu-
ary 21, 1932, Barker served written demands on each of the
sublessees ''To surrender possession of that certain portion of
the premises and appurtenances of the Hotel Oakland now
used and/or occupied by you,'' but soon afterwards entered
into new agreements with the concessionaires whereby they
resumed the operation of their concessions under a new agree-
ment to pay to him a monthly rental. On February 18, 1932,
the holding company was declared an involuntary bankrupt,
and Street was appointed as trustee; but prior to such adjudi-
cation and appointment, to wit, on February 2, 1932, the
present action was filed.

The two appeals present different questions. ■ The
main ground urged by the appellants Wood brothers for
reversal of the money judgment entered against them is that
the sums of money sued for by plaintiffs were paid to George
W. Wood as bonuses for the execution of the subleases, and
not as advance rent or security for the faithful performance
of the subleases, and that therefore the same were not subject
to repayment even though the subleases were terminated pre-
maturely by the acts of the lessors or their successors for
reasons of their own and not because of any breach on the
part of the sublessees. The cases relied on by appellants in
support of the above contention are *Ramish* v. *Workman,*
33 Cal. App. 19 [164 Pac. 26]; *Curtis* v. *Arnold,* 43 Cal. App.
97 [184 Pac. 510]; *Anderson* v. *Julius Levin Co.,* 71 Cal.
App. 73 [234 Pac. 442]; *McArthur* v. *Kluck,* 75 Cal. App.
785 [243 Pac. 453]; and especially *Wood* v. *Hipwell,* 107 Cal.
App. 680 [290 Pac. 1040]. The trial court made no specific
finding as to the nature of said advance payments, other than
to find on apparently conflicting evidence that said sums
were paid ''for the use and benefit of'' the sublessees; and
such finding, when considered in the light of the evidence

upon which it is based, implies that said payments were made, not in the nature of bonuses, but as security for the faithful performance of the subleases to be applied as rent for the concluding periods of the subleases; and it would seem that the evidence as a whole supports such conclusion. ▮ It is true, as pointed out by said appellants, each document given by Wood in acknowledgment of the receipt of the advance payment (all of which documents were identical in form except as to dates, names and amounts) recited that the sums mentioned therein were paid "as a special inducement to the Wood brothers to enter into" the sublease. But no suggestion whatever was made therein of any terms or conditions of the proposed subleases and consequently standing alone said documents amount to nothing more than nude pacts, the meaning of which must be construed in connection with the provisions of the subleases themselves, which were executed simultaneously therewith, and the testimony given by the parties as to the circumstances under which such documents were executed. In this regard the testimony shows that in negotiating the subleases Wood told each of the sublessees in substance that he would require a substantial down payment as a deposit "to protect the lease"—so that the lessee "would not walk out the next day", and that the amount of such deposit would be credited as rent for the concluding months of the subleases; and although when drafted the subleases failed so to provide, or to mention any advance payment, each of them (except the Courtney sublease) did provide for only nominal rental for the concluding months, to the extent of covering the full amount of the advance payment; and the Courtney sublease, which granted the dancing concession and called for the payment of a minimum nightly rental of $50, provided for a payment to him by the lessors of $1,000 (which was the amount of the advance payment made by him) "as a premium or gift" at the expiration of the sublease, in the event he faithfully performed the conditions of the sublease.

▮ Irrespective, however, of the question of the sufficiency of the evidence to sustain said finding, and even assuming, as appellants contend, that the wording of said documents evidencing the down payments are controlling and it be held that the advance payments were made as bonuses, the rule

declared and adhered to by the cases relied on by appellants has no application to the facts of the present case for the simple reason that in each of those cases the lease was terminated by reason of the default of the lessee; whereas here the subleases were prematurely terminated by the acts of the lessors and their successors, without fault of any kind on the part of the sublessees. That being so, there was a failure of consideration, which, as held by the trial court, entitled the sublessees to the return of the advance payments made by them, the same as if it had been paid as rent in advance or as security for the faithful performance of the subleases. The remaining points urged by these appellants are without merit for the reason that they are incidental to the main one above discussed.

As above mentioned, the intervener's appeal presents an issue foreign to the one involved in the appeal taken by the defendants Wood Brothers. In this respect he states in his brief that he "has no interest as to any judgment in favor of the plaintiffs and against the defendants and is not concerned as to whether the plaintiffs execute upon any judgment as against the defendants, except that such judgment should not be executed as against this particular fund upon the theory that this fund is the property of the defendants and therefore subject to such execution. The issue to be considered, therefore", so far as his appeal is concerned, so he states, "is whether, as between the defendants and the intervener, the fund in the possession of the defendant bank is the property of the defendants or the defendant George W. Wood, or whether it is the property of the bankrupt corporation, to which the intervener is entitled as trustee in bankruptcy". And in furtherance of his asserted claim to said bank deposit he contends that the holding company is the *alter ego* of the copartnership; that the money so paid by the sublessees to George W. Wood was received by the latter as the agent of and in trust for the holding company and of which the holding company became the *cestui que trust;* that although afterwards said moneys were mingled with personal funds belonging to George W. Wood and with those of his brother Lewin A. Wood, said moneys are nevertheless traceable to the $2,600 deposited in the bank by George W.

Wood, and that therefore said deposit is the property of the estate of the bankrupt holding company.

In holding adversely to the above contention the trial court specifically found that the holding company was not the *alter ego* of the copartnership and that the money so deposited in the bank by George W. Wood did not constitute a trust fund, and therefore did not belong to the bankrupt's estate; and there is ample evidence to sustain these findings. As to the first, it shows without dispute that Lewin A. Wood, one of the two members of said copartnership, was not one of the incorporators of the holding company, nor interested financially or otherwise therein; ██ and as to the second finding the evidence shows that immediately after the advance moneys were paid to George W. Wood by the sublessees some of it was divided between the two copartners and that the remainder thereof was retained by George W. Wood as his own personal funds pursuant to resolutions passed by the directors of the holding company; that the same was mingled by them with their other funds, and that the money used by George W. Wood to make the deposit in the bank was obtained by him from other sources. Therefore, since the bank deposit is not traceable to the money paid in advance to George W. Wood by said sublessees, its identity as a trust fund failed. In other words, the right of pursuing a trust fund fails when the means of ascertainment fails. (*Estate of Arms,* 186 Cal. 554, 561 [199 Pac. 1053] ; *Lathrop* v. *Bampton,* 31 Cal. 17, 22 [89 Am. Dec. 141].)

██ Further contention is made by the intervener that the subleases were not terminated by the acts of the holding company in locking the doors of the hotel and the service upon the sublessees by the receiver of the notices to surrender possession, because soon thereafter they reopened their concessions and operated under the new arrangement with the receiver. Even though the intervener be concerned with the determination of this question, there is no merit in his contention, because clearly the acts above mentioned amounted to a constructive eviction which terminated the subleases. (*Blessing* v. *Fetters,* 40 Cal. App. 471 [181 Pac. 108] ; *Black* v. *Knight,* 176 Cal. 722 [169 Pac. 382, L. R. A. 1918C, 319].)

In view of the conclusion reached on the main issue raised by the intervener's appeal, the remaining points urged by him become immaterial.

The judgment is affirmed.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 19, 1935.